434 Mass. 51 (2001)                                    51

In the Matter of the Receivership of Harvard Pilgrim Health Care, Inc.

IN THE MATTER OF THE RECEIVERSHIP OF HARVARD PILGRIM
HEALTH CARE, INC., & others.[1]

Suffolk. March 5, 2001. - April 26, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, & SOSMAN, JJ.

*Health Maintenance Organization. Receiver. Practice, Civil,* Standing, Parties.
*Supreme Judicial Court,* Appeal from order of single justice, Jurisdiction.

A party to a receivership proceeding before the single justice, treated as an
   amicus curiae and not as a party, which did not move to intervene during
   the proceedings or after the entry of judgment, had no standing to appeal
   from the orders of the single justice. [55-60]
Discussion of the nature and rights of an amicus curiae, particularly in cases
   before a single justice. [57-58]
This court commented generally on receivership proceedings before a single
   justice involving the interests of the public, in which an amicus curiae may
   have raised an interest. [60-62]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on January 4, 2000.

The case was heard by *Spina*, J.

*S. Stephen Rosenfeld* (*Laurie Martinelli* with him) for Health
Care for All.

*J. David Leslie*, Special Assistant Attorney General (*Eric A.
Smith*, Special Assistant Attorney General, with him) for Com-
missioner of Insurance & another.

*Walter W. Miller, Jr.*, amicus curiae, submitted a brief.

GREANEY, J. This appeal arises out of the receivership of Har-
vard Pilgrim Health Care, Inc., Pilgrim Health Care, Inc., and
Harvard Pilgrim Health Care of New England, Inc. (collectively,
HPHC), which conduct business as health maintenance

---

[1]Pilgrim Health Care, Inc., and Harvard Pilgrim Health Care of New
England, Inc.

52 ·                                434 Mass. 51 (2001)

In the Matter of the Receivership of Harvard Pilgrim Health Care, Inc.

organizations (HMO or HMOs).[2] Health Care for All (Health Care), a nonprofit, consumer advocacy organization, which was permitted, essentially as an amicus curiae, to participate in the receivership proceedings, filed notices of appeal from orders entered by the single justice of this court who presided over the receivership proceedings. The challenged orders approved the amended plan of rehabilitation of HPHC which was presented by the Commissioner of Insurance (commissioner) and the Attorney General; entered permanent injunctions against certain claims being brought against HPHC and others; and dismissed the receivership proceeding, thereby releasing HPHC from receivership. Health Care argues that the single justice did not adhere to applicable legal standards governing his role in overseeing a receivership of this type because he failed to require the commissioner to produce for examination business and financial documents of HPHC that the commissioner had relied on in submitting the proposed plan for HPHC's rehabilitation. Health Care asks that the case be remanded to the single justice for additional proceedings at which the undisclosed information is to be produced and examined. We conclude that Health Care's appeal should be dismissed. We shall, however, take this opportunity to discuss how a dispute like this one should be handled in the future by a single justice dealing with a HMO receivership.

The background of the case is as follows. On January 4, 2000, the commissioner, through the Attorney General, filed

---

[2]General Laws c. 176G, § 1, defines a "[h]ealth maintenance organization" as:

"a company organized under the laws of the commonwealth, or organized under the laws of another state and qualified to do business in the commonwealth, which:

"(1) provides or arranges for the provision of health services to voluntarily enrolled members in exchange primarily for a prepaid per capita or aggregate fixed sum.

"(2) demonstrates to the satisfaction of the commissioner [of insurance] proof of its capability to provide its members protection against loss of prepaid fees or unavailability of covered health services resulting from its insolvency or bankruptcy or from other financial impairment of its obligations to its members."

receivership proceedings pursuant to G. L. c. 176G, § 20,[3] and G. L. c. 175, § 180B,[4] in the Supreme Judicial Court for Suffolk County, seeking HPHC's rehabilitation.[5] HPHC assented to these proceedings, and that same day, a single justice entered a temporary injunction and order appointing the commissioner as temporary receiver.[6] Subsequently, Health Care moved for leave of court to appear as an amicus curiae. The commissioner and the Attorney General notified the court that they did not oppose Health Care's motion. On February 1, 2000, a single justice entered the following order:

> "It is ORDERED that no action will be taken on the motion[]. Counsels' appearances will suffice to entitle [Health Care] to receive copies of all papers and to express

[3]General Laws c. 176G, § 20, inserted by St. 1999, c. 143, § 7, provides:

"Any administrative supervision, rehabilitation or liquidation of a health maintenance organization [that is 'insolvent or in unsound financial condition'] shall be deemed to be the administrative supervision, rehabilitation or liquidation of an insurance company and shall be instituted on the grounds contained in and conducted pursuant to sections . . . 180A to 180L, inclusive, of chapter 175 . . . ."

[4]General Laws c. 175, § 180B, authorizes the commissioner to "institute a rehabilitation proceeding" by "making application to the supreme judicial court for [her] appointment as receiver." On appointing the commissioner as temporary or permanent receiver, the court may authorize the receiver "to take possession of all property and effects of the company and to conduct its business for the purpose of rehabilitating it by taking such measures as may be proper to eliminate the causes and conditions which caused the institution of such proceedings, subject to the order of the court." Id. At any time, the receiver may apply to the court for a termination of such proceedings and "for the return to the company of all its property and effects, with authority to resume the conduct of its business." Id.

[5]At that time, HPHC provided health care coverage to approximately 1.1 million group, individual, Medicaid, and Medicare members in New England. The commissioner sought receivership over HPHC after determining that HPHC was "in an unsound financial condition" based, in part, on: significant deterioration in HPHC's financial performance in 1997 and 1998 (HPHC experienced a net loss of $54 million for the year ending 1998); HPHC's "thin[]" capitalization; the failure of HPHC's board to restore HPHC's financial condition through the implementation of a "turnaround plan"; and HPHC's projected net operating loss of at least $150 million for the year ending 1999.

[6]On January 21, 2000, an amended complaint was filed adding the Attorney General as a party plaintiff because of his role, under G. L. c. 12, § 8, in overseeing the funds of nonprofit organizations such as HPHC.

54          434 Mass. 51 (2001)

In the Matter of the Receivership of Harvard Pilgrim Health Care, Inc.

[its] positions as to any matter in writing, and, with leave of court, in oral argument. [Health Care] will not have party status."

After having filed two status reports with the court, the commissioner and the Attorney General moved, on March 20, 2000, for the approval of a plan of rehabilitation for HPHC. On March 21, 2000, the single justice entered an order which: (1) addressed the manner of notifying interested persons of the proposed plan; (2) established a deadline of April 10, 2000, for the filing of written oppositions to the proposed plan; (3) established a deadline of April 18, 2000, for any response by the commissioner and the Attorney General to any opposition; and (4) scheduled a hearing on the motion for April 27, 2000. On April 10, Health Care, asserting that the evidentiary disclosure supporting the commissioner's proposed rehabilitation plan was inadequate, filed a motion and memorandum of law opposing the proposed plan, or alternatively, requesting that the plan be amended. On April 18, the commissioner and the Attorney General filed an amended plan for HPHC's rehabilitation (amended plan), as well as a consolidated response to the various oppositions filed (including Health Care's opposition) to the initially proposed plan.[7] The single justice held a hearing concerning the amended plan on April 27, at which Health Care, among others, was heard. On May 24, the single justice entered a memorandum of decision addressing and rejecting objections, including Health Care's, to the amended plan, and, an order approving the amended plan. After the commissioner filed her certificate (as had been ordered by the single justice) stating that she had completed the steps necessary to implement the amended plan, the single justice, on June 21, 2000, entered an order dismissing the proceeding, vacating the temporary injunction, and discharging the commissioner as temporary receiver.[8] Health Care filed notices of appeal from the orders approving the amended plan, and dismissing the receivership proceedings.

---

[7]The amended plan incorporates certain changes, not relevant here, suggested by several objectors other than Health Care.

[8]Permanent injunctions that previously had been entered in connection with the approval of the amended plan remain in effect.

On appeal, Health Care argues that the single justice erred in approving the amended plan, and in terminating the receivership proceedings, "under circumstances where the [r]eceiver failed to disclose to the court and the affected parties critical financial data, health care business plans and other reports that served as the exclusive basis upon which the [r]eceiver relied in recommending that the receivership be terminated." The specific documents that Health Care claims should have been disclosed are (1) HPHC's "turnaround plan," (2) HPHC's "2000 business plan," and (3) an outside accounting firm's (KPMG Peat Marwick) review of the business plan (collectively, documents). Although the commissioner, in her affidavit in support of the motion for the approval of the amended plan, identified, and to some extent summarized, these documents, Health Care argues that the single justice was required to review these documents independently instead of relying on the commissioner's reference to, and summary of, these documents in her affidavit.

The appellees, the commissioner and the Attorney General, argue that Health Care lacks standing to appeal, and, that, in any event, the single justice acted within his discretion in not requiring the submission of the documents. The appellees further argue that this appeal should be dismissed as equitably moot because the amended plan has been implemented and the receivership has been terminated.

1. Health Care properly does not dispute the appellees' claim that it is not a "party aggrieved" within the meaning of G. L. c. 231, § 114, and has no standing to appeal.[9] Instead, Health Care contends that the court should exercise its discretion to hear Health Care's appeal because the appeal involves an issue of significant public interest. In addition, Health Care maintains that other factors weigh in favor of the court's exercising its discretion, for example, that Health Care was treated like a party before the single justice, and that the appellees never argued below that Health Care lacked standing, but had they, that Health Care could have moved to intervene.

[9]General Laws c. 231, § 114, provides:

"A party aggrieved by a final judgment of a single justice of the supreme judicial court may appeal therefrom to the full court of the supreme judicial court."

Health Care's latter arguments, listed as "other factors," provide no basis to accord it the standing it seeks. The single justice made it clear, in his February 1, 2000, order, that Health Care would not have party status in the proceedings, and he essentially treated Health Care, in keeping with its request, as an amicus curiae and not as a party. The issue of standing may be raised at any time. See *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 322 (1998); *Litton Business Sys., Inc.* v. *Commissioner of Revenue*, 383 Mass. 619, 622 (1981). See also Mass. R. Civ. P. 12 (h) (3), 365 Mass. 754 (1974). Thus, any failure of the appellees to raise the issue of Health Care's standing below does not result in a waiver of the issue. See *Litton Business Sys., Inc.* v. *Commissioner of Revenue*, *supra.* Further, what Health Care "could have done" in other circumstances is speculative. If Health Care wanted to be treated as a party, it should have moved to intervene during the proceedings, or after the entry of judgment. See *Corbett* v. *Related Cos. Northeast, Inc.*, 424 Mass. 714, 718 (1997); *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 611 (1983).

Health Care's other arguments that it should be accorded the equivalent of formal standing to attack the orders in issue merit comment. These arguments are essentially threefold: (1) because the issues are fully briefed in an adequate record and concern matters of important public policy that are likely to recur, they should be decided now, see *Lenox Educ. Ass'n* v. *Labor Relations Comm'n*, 393 Mass. 276, 278 (1984); *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943); (2) amici curiae (various guaranty funds) in a prior insurance company liquidation case had their arguments formally considered by the full court in its analysis and decision of questions reported to the court by a single justice, see *Matter of the Liquidation of Am. Mut. Liab. Ins. Co.*, 417 Mass. 724, 727 n.4 (1994) (*American Mutual*); (3) a receivership proceeding such as this one is not truly adversary because the commissioner is given virtually unlimited authority to decide whether a plan of rehabilitation should be implemented, and the commissioner's decision, if improper or unfounded, may adversely affect the HMO's subscribers, as well as the health care providers with whom it contracts, unless some voice in opposition to the decision is

434 Mass. 51 (2001)                    57

In the Matter of the Receivership of Harvard Pilgrim Health Care, Inc.

fully heard and, if need be, afforded the right to appeal. The allegation here is that the single justice merely "rubber stamped" his approval on the commissioner's amended plan and terminated the receivership solely on the basis of the commissioner's unsupported assurances that HPHC's unsound financial condition had abated. Health Care suggests that it is a voice of possible objection to, or constructive criticism of, the amended plan because (quoting from its motion to appear as an amicus curiae): it is "a nonprofit, statewide consumer advocacy organization whose mission is to ensure access to quality health care for Massachusetts' vulnerable consumers"; it has "substantial interest and experience in the various plans offered by [HPHC] and the health care needs of its members"; it can provide "substantial and important feedback on any proposals to alter the management structure of [HPHC]"; and "[i]n the case of insolvency or liquidation, [it] can aid the [c]ourt in the transition and equitable assignment of alternative insurance plans to cover [HPHC's] members in the nongroup, small group, and group markets."[10]

The longstanding rule is that an amicus curiae is not a party to the case and, because the amicus lacks standing, it has "no right . . . to bring the case from one court to another, or from a single judge to the full court, by [appeal]." *Martin* v. *Tapley*, 119 Mass. 116, 120 (1875). See *Caldwell* v. *A-1 Sales, Inc.*, 385 Mass. 753, 756 (1982). Thus, an amicus curiae "is heard only by the leave and for the assistance of the court." *Martin* v. *Tapley, supra* at 120. See Mass. R. A. P. 17, as amended, 426 Mass. 1602 (1998). These rules exist because the proceeding has undergone an adversary hearing in the trial court where an amicus curiae was not a party, and did not engage in the adversary process. Thus, an amicus is not permitted to enter the picture on appeal with party status, but is allowed to assist the appellate court by way of offering information and legal argument. Usually such argument is limited to only those issues addressed by the parties. See *Pineo* v. *Executive Council*, 412 Mass. 31, 35 n.6 (1992); *United Techs. Corp.* v. *Liberty Mut.*

[10]Insolvency or liquidation did not occur here, but those steps may follow when a financially distressed HMO cannot be made stable by means of a plan of rehabilitation.

*Ins. Co.,* 407 Mass. 591, 593 n.3 (1990); *Samuel Hertzig Corp.* v. *Gibbs,* 295 Mass. 229, 232 (1936).

There is a limited exception to this rule in insurance liquidation or receivership proceedings that is reflected in the *American Mutual* case, *supra.* That case involved the liquidation of an insurance company, and the single justice, pending the full court's response to his reported questions, denied, "without prejudice," party status to guaranty funds seeking intervention. *American Mutual, supra* at 725-727. The guaranty funds, however, were permitted to assert their arguments as amici curiae. *Id.* at 727 n.4, 729. The single justice reserved and reported the case on four questions of law, framing the report in such a way that the amici curiae, the guaranty funds, became the primary source of argument on the appeal for a position that not only affected their rights, but also was material to a proper resolution of the reported questions. See *id.* at 728. This court exercised its discretion to hear the appeal in this posture and to address and decide the arguments of the amici. See *id.* at 727 n.4, 730-731, 733-736. The reasons behind the exception take into account that, although the single justice in the county court is acting as a trial judge, the proceedings there are not truly adversary because the commissioner (at times aided by the Attorney General if a nonprofit entity is involved) and the financially stressed insurance company or HMO are the driving force behind resolution of the litigation. See *id.* at 727 n.4. There can be objections to the plan proposed by the commissioner. But, in many cases, there are other objectors who represent important interests that have relevant information and legal argument, but who are unable to obtain party status because they do not meet the criteria under Mass. R. Civ. P. 24, 365 Mass. 769 (1974), to intervene. For this reason, single justices have consistently afforded liberal allowance to any person or entity, who has something important to say to the single justice about the commissioner's action, to do so by means of amicus curiae submissions.

The *American Mutual* case is not on point here. As stated above, the *American Mutual* proceedings were framed by the single justice to bring the amici squarely before us. That procedure was not followed here. Also, in the *American Mutual*

case, some of the guaranty funds would be directly affected by the answers to the reported questions. While Health Care acts as a consumer organization with a special, admittedly sincere, interest in what occurs with HMOs in distress or not in distress, it makes no claim that it, or its members, will be directly affected by the receivership proceedings. In fact, although Health Care asserts it in brief that it "represents the sole voice before this court for hundreds of thousands of subscribers," nothing in the record identifies who Health Care's members are, let alone whether they are subscribers, or members, of HPHC. These facts do not exist without significance. See *Animal Legal Defense Fund, Inc.* v. *Fisheries & Wildlife Bd.*, 416 Mass. 635, 638 n.4 (1993) (to possess associational standing, organization must establish that its members would independently possess standing). Health Care also does not fully take into account the statutory duty of the Attorney General to protect the public interest in the lawful operation of nonprofit entities. Cf. *Weaver* v. *Wood*, 425 Mass. 270, 276 (1997), cert. denied, 522 U.S. 1049 (1998). In complying with this duty, the Attorney General cannot disregard considering the potential consequences to HPHC's members associated with the implementation of any proposed rehabilitation plan. It is important to note as well that Health Care apparently believed that it could intervene in the proceedings, but chose not to do so, accepting its assumed status as an amicus, and neglected, as a purported amicus, to comply with the requirements of Mass. R. A. P. 17.

Finally, as a court of general equity jurisdiction under G. L. c. 214, § 1, reviewing a proceeding that is equitable in nature, see *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 730 (1980), we cannot ignore the current posture of this case when considering whether to exercise our discretion to hear the appeal despite Health Care's lack of standing.[11] In the *American Mutual* case, the proceedings were halted until such time as the issues stated

[11]We reject the appellees' contention that the current posture of the case, that is, the fact that the amended plan has been implemented and the receivership has been terminated, presently render the appeal "equitably moot." See *In re Healthco Int'l, Inc.*, 136 F.3d 45, 48 (1st Cir. 1998) (equitable mootness test "inquires whether an unwarranted or repeated failure to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible," thus

in the reported questions were decided. *American Mutual, supra* at 727. After our opinion was released, the case was remanded to the single justice for additional proceedings based on the analysis and results in the decision. *Id.* at 739. Here, Health Care did not move to stay the proceedings while it pursued this appeal. In the meantime, third parties have relied on the challenged orders in dealing with HPHC, and, in implementing the amended plan. As pointed out by the appellees, before HPHC was released from receivership, the commissioner, in accordance with the amended plan, executed several settlements, and since the termination of the receivership, HPHC "has not only implemented the [a]mended [p]lan by issuing surplus notes to pre-receivership general unsecured creditors and processing and paying claims in the [HPHC Rhode Island] liquidation, but it has also continued with its business. As a result, it has negotiated and entered into new or renewed contracts with thousands of employers, hundreds of thousands of members, and hundreds of hospitals, physician groups and other providers."

For these reasons, we conclude that Health Care does not have standing to appeal, and that the circumstances do not warrant our exercising our discretion to grant the review it seeks. Health Care's appeal will be dismissed.

2. The case is an appropriate one to comment generally on how similar proceedings might be handled in the future by a single justice. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

The commissioner and the Attorney General (when he is a party) are public officials who are charged with representing the interests of the public, and protecting the interests and expectations, to the extent possible, of policyholders of insurance companies and members of HMOs who may be adversely affected by the receivership as well as creditors, guaranty funds,

---

barring an appeal). Whether remediation of the challenged orders, if ordered, would be impracticable or impossible depends on the type of remediation ordered, an issue that cannot be fully examined or resolved unless or until such remediation is ordered. Such a determination would lie with the single justice. Further, even if the appeal were moot, in our discretion we could hear the appeal. See *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 783 (1984), and cases cited (recognizing exception to mootness where issue was one of public importance, was fully argued, and was very likely to arise again).

reinsurers, and others. The commissioner is subject to executive and legislative oversight.

This court, and its single justice, however, play a central role in receivership proceedings. The court has been authorized by the Legislature to have exclusive jurisdiction over receivership rehabilitation and liquidation proceedings. See G. L. c. 175, § 180B (rehabilitation proceedings), § 180C (liquidation proceedings). The court provides a statutorily based independent judicial oversight of the commissioner's actions and proposals with a view toward protecting the rights of the parties as well as the interests of the public, members of "financially troubled" HMOs, and others with a stake in the outcome. See St. 1999, c. 143, § 1.

The single justice should liberally allow amicus status, and the single justice must comply with the governing standards set forth in G. L. c. 175, § 180B, concerning the approval of rehabilitation plans and the termination of receivership proceedings. These standards obligate the single justice: (1) prior to approving a proposed plan of rehabilitation, to ensure that the receiver has taken "such measures as may be proper to eliminate the causes and conditions which caused the institution of such proceeding"; and (2) prior to terminating the receivership proceedings, to be "satisfied after due notice and a full hearing that the purposes of the proceedings have been substantially accomplished." G. L. c. 175, § 180B.

These enumerated tasks require the single justice to evaluate carefully any objections presented by interested amici to termination of the receivership against the reasons given by the receiver for concluding that the problems that caused the receivership have been corrected. In making the evaluation, the single justice "may give such weight as he or she considers appropriate to the receiver's expertise as commissioner." *American Mutual, supra* at 738.

The single justice has discretion to determine whether he or she should examine the underlying documents relied on by the receiver in recommending termination of the receivership. If, after full hearing, it appears to the informed satisfaction of the single justice from the records of the case and the receiver's submissions that a judgment terminating the receivership is

proper, the single justice may direct that the judgment enter. On the other hand, if the receiver's admissions are uninformative by reason of their conclusory nature or otherwise, then the single justice should not terminate the receivership, but rather should call either for more detailed submissions from the receiver or examine the underlying documents in camera (or both). If the single justice calls for the documents and, after examining them, decides that expert assistance is needed to reach an informed conclusion, he or she may engage such help and charge the costs to the receivership. Further, if the single justice decides, in his or her discretion, that an amicus who had raised a proper objection and shown a valid interest in the proceedings, should review and comment on the documents, the single justice may order that the documents be disclosed to the amicus for confidential review subject, when appropriate, to protective orders and confidentiality agreements that ensure that confidential or proprietary information will be adequately safeguarded.

We conclude that the single justice here should have called for the underlying documents or required the commissioner to provide a more detailed explanation of the bases for her conclusory opinions. We do not consider the commissioner's affidavit and submissions, in light of the record as a whole, to have been sufficient to show, without either further explanation from the commissioner or review of the documents by the single justice, that "the purposes of the [receivership] proceedings have been substantially accomplished." Cf. *American Mutual, supra* at 738 ("To perform review effectively, the single justice should be provided with the information on which the receiver's decision to settle was based. The receiver's conclusory statement in her affidavit supporting approval, that the settlement was 'a reasonable exercise of [her] authority' is not enough. The receiver should open her records for scrutiny [by the single justice]"). For the reasons stated in Part 1 of this opinion, however, the single justice's decision to allow termination of the receivership will not be disturbed.

3. The case is remanded to the county court where a judg-

ment is to enter dismissing Health Care's appeal for lack of standing.

*So ordered.*