PAUL F. SOMMER vs. SHANTEE MAHARAJ, executrix,[1] &
another[2]; VANGUARD FIDUCIARY TRUST COMPANY & others,[3]
third-party defendants.

No. 04-P-591.

Middlesex. October 14, 2005. - March 3, 2006.

Present: RAPOZA, GRAHAM, & KATZMANN, JJ.

Further appellate review granted, 447 Mass. 1110 (2006).

*Employee Retirement Income Security Act. Pension. Retirement. Individual Retirement Account. Receiver. Practice, Civil,* Judgment, Dismissal, Moot case. *Superior Court,* Jurisdiction. *Jurisdiction,* Personal.

Public policy and due process considerations prohibited a Superior Court judge's ruling that a decedent's previous misconduct, which had resulted in the dismissal of his right to appeal from a judgment entered against him in a shareholder action, operated to forfeit any right on the part of his estate and his widow to contest the seizure of certain individual retirement accounts by a court-appointed receiver to satisfy the judgment against the decedent, where the receivership issues arose after the dismissal of the decedent's appeal and were separate and distinct from that litigation [660-663]; as no other grounds existed to justify the ruling, this court remanded the matter to the Superior Court for a hearing on the merits of the receivership issues [663-666].

The record of a civil action brought against a decedent overwhelmingly established the Superior Court's personal jurisdiction over the decedent's widow in postjudgment proceedings [666-668], as well as the widow's standing to pursue an appeal from those proceedings [668].

An appealing party's failure to obtain a stay pending appeal from receivership proceedings did not prohibit this court from exercising appellate jurisdiction, where the potential relief on remand would not be so inequitable or impracticable as to render the appeal moot. [668-669]

CIVIL ACTION commenced in the Superior Court Department on May 8, 1989.

[1] D. Dev Monga was originally named as a defendant; after his death in 1996, Maharaj eventually was appointed the executrix of his estate. See note 6, *infra.*

[2] John C. Ottenberg, receiver of D. Dev Monga and Core Environmental & Engineering Resources, Inc. Ottenberg was appointed receiver in 1992, after judgment entered against the originally named defendants in 1991.

[3] Vanguard/Morgan Growth Fund, Inc.; Dreyfus Founders Funds, Inc.; Citadel Service Co., Inc.; Investors Fiduciary Trust Co.; and Shantee Maharaj.

Following review by this court, 35 Mass. App. Ct. 761 (1994), additional postjudgment motions were heard by *Judith Fabricant, J.*

*John G.S. Flym* for Santee Maharaj.

*John R. Baraniak, Jr.* (*Kristin Moody* with him) for Vanguard Fiduciary Trust Company & others.

*Peter S. Brooks* for the plaintiff.

*John C. Ottenberg,* pro se.

GRAHAM, J. This is an appeal by the estate of D. Dev Monga and the decedent's widow, Shantee Maharaj, from a Superior Court judge's orders allowing a court-appointed receiver to access and distribute their individual retirement accounts to satisfy a judgment entered in favor of Paul F. Sommer, the plaintiff in the underlying shareholder dispute. Although such accounts are generally protected from the claims of creditors, the judge ruled that the decedent and Maharaj forfeited their rights to contest the seizure because they disobeyed an earlier court order to turn over the accounts to the receiver. We vacate the relevant orders and reverse in part.

1. *Background.* Sommer and the decedent, Monga, were shareholders in two corporations, Core Environmental & Engineering Resources, Inc. (Core), and Subsurface Technologies, Inc. (Subsurface). Their original dispute came to the Superior Court in 1989, when Monga, the companies' founder and controlling shareholder, terminated his business relationship with Sommer and purportedly offered to repurchase Sommer's shares under the provisions of the parties' written agreement. Sommer refused Monga's offer and sued Monga, Core and Subsurface for breach of contract and fiduciary duty. A jury found in Sommer's favor, and judgment entered against Monga, Core and Subsurface on June 18, 1991, in the amount of $478,904.03. Monga and the companies appealed, but the appeal was eventually dismissed. See *Sommer* v. *Monga,* 35 Mass. App. Ct. 761 (1994), cert. denied, 513 U.S. 1169 (1995).[4]

Sommer initiated postjudgment proceedings to discover and secure assets and to enforce the judgment against Monga, Core

---

[4]See our discussion, *infra.*

and Subsurface. To that end, on June 12, 1991, the trial judge issued an injunction prohibiting Monga and the companies from transferring or otherwise alienating their assets other than in the ordinary course of business. Sommer soon learned, however, that Monga and his wife, Maharaj, had been mingling their assets and those of the companies and transferring them beyond Sommer's reach. At the same time, Monga failed to comply with discovery requests and interfered with Sommer's attempts to elicit discovery from third parties. On January 28, 1992, the trial judge granted Sommer's motion for a preliminary injunction, ordering Monga to appear for his deposition, to produce requested documents, to stop harassing third parties from whom Sommer had sought discovery, and to stop filing frivolous and repetitive motions in an attempt to interfere with Sommer's discovery efforts.

Monga's defiance continued nevertheless, and on June 10, 1992, Sommer filed a complaint for contempt and moved for the appointment of a receiver. When Monga failed to appear for a June 15, 1992, hearing on Sommer's complaint, the judge issued a capias for Monga's arrest and entered a judgment of contempt against him. As a result of his failure to surrender to the capias and purge himself of the contempt, this court dismissed Monga's appeal from the underlying judgment. See *Sommer* v. *Monga*, 35 Mass. App. Ct. at 764-765.

Also on June 15, 1992, the judge granted Sommer's request for a receiver, appointing John C. Ottenberg, and instructing him to take control of the defendants' and Maharaj's assets. In his efforts to locate and collect the assets, Ottenberg discovered certain individual retirement accounts (the IRA accounts) in Monga's name. These included an account with Vanguard Fiduciary Trust Company and Vanguard/Morgan Growth Company (Vanguard), and two accounts with Dreyfus Founders Fund and Investors Fiduciary Trust Company (collectively, the fund defendants). Ottenberg also uncovered two accounts in Maharaj's name, one a revocable trust at the Central Cooperative Bank, the other with Fidelity Service Company, both held by Maharaj as trustee for the benefit of her nephew,

Adhiraj Deepak Gosine, under the Uniform Transfers to Minors Act, G. L. c. 201A, §§ 1 et seq.[5]

Ottenberg obtained an order from the Superior Court requiring the transfer of the IRA accounts to the receivership estate. When neither Monga nor the fund defendants complied, Ottenberg filed a complaint in Superior Court on January 5, 1995, against the fund defendants and Monga, to effect turnover of those accounts. This spawned a new round of legal activity on several fronts. Ultimately, as of June 1, 1995, the fund defendants complied with a Superior Court order to freeze the IRA accounts, pending resolution of the competing claims.

Monga died of cancer on August 23, 1996. Shortly after, Maharaj instructed the fund defendants to pay the funds in the IRA accounts to her, as the named beneficiary on the accounts. The funds refused. Ottenberg then amended his complaint to add Maharaj as a defendant,[6] and moved for summary judgment on his claim to recover the funds, as set forth in his August 12, 1997, "Receiver's Amended Substitute Complaint to Effect Turnover of Accounts."

A hearing was held in the Superior Court on September 24, 1998, by which time some twenty motions were before the judge. On October 8, 1998, the judge issued her "Memorandum of Decision and Orders on Pending Motions." In disposing of the various matters before her, the judge declined to reach the merits of the competing claims to the IRA accounts, ruling instead that Monga's estate and Maharaj had forfeited any right to contest their seizure. On August 1, 2000, the judge entered a judgment on receivership, and Ottenberg disbursed the receivership estate.[7] Monga's estate and Maharaj filed this appeal.

2. *The IRA accounts and due process considerations.* On ap-

---

[5]As of June, 1998, the IRA accounts had a total value of approximately $170,000. Maharaj's trust accounts totaled approximately $7,000 when they were turned over to the receiver in 1992.

[6]Edmund J. Brokans was the original administrator of Monga's estate, but was replaced by Maharaj.

[7]Of the $214,750.54 remaining in the receivership estate, Ottenberg distributed amounts as follows: $60,000 to Brooks & Lupan, Sommer's attorneys; $12,000 to Choate, Hall & Stewart, the fund defendants' attorneys; $43,265.55 to the receiver's law firm (according to Monga's estate and Maharaj, Ottenberg's firm was paid a total of $147,000 over the course of the receivership); and the remaining funds to Sommer.

peal, Monga's estate and Maharaj principally challenge the forfeiture of the IRA accounts. They point to the protections afforded such accounts, firmly established by Federal and State statutes and United States Supreme Court decisional law. As explained by the Supreme Court with respect to pension benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. (2000), the prohibition on alienation of pension benefits, pursuant to 29 U.S.C. § 1056(d)(1) (2000), "reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them." *Guidry* v. *Sheet Metal Workers Natl. Pension Fund*, 493 U.S. 365, 376 (1990). Thus, the Supreme Court, in *Patterson* v. *Shumate*, 504 U.S. 753, 760 (1992), held that a bankrupt debtor's interest in an ERISA-qualified pension plan was to be excluded, pursuant to its anti-alienation provision, from the property of a bankruptcy estate.

Based on these well-accepted principles, Monga's estate and Maharaj argue that public policy and due process protections cut against the judge's denial of their right to litigate the receiver's seizure of the IRA accounts. Ottenberg and the fund defendants have acknowledged that valid IRA accounts, like ERISA pension benefits, would be exempt from the claims of Monga's creditors. See, e.g., G. L. c. 235, § 34A.[8] But on appeal, they insist that Monga's and Maharaj's claims to the funds, however valid, were properly forfeited because they flouted the judge's orders.

The judge relied on our analysis in *Sommer* v. *Monga*, 35 Mass. App. Ct. at 764-765, in ruling that Monga's defiance of the order to turn the IRA accounts over to the receiver effected a waiver of any right to assert a statutory exemption for those

---

[8]Chapter 235, § 34A, as appearing in St. 1998, c. 374, § 1, provides, in relevant part: "The right or interest of any person in an annuity, pension, profit sharing or other retirement plan subject to the federal Employee Retirement Income Security Act of 1974 . . . shall be exempt from the operation of any law relating to insolvency and shall not be attached or taken on execution or other process to satisfy any debt or liability of such person."

funds.[9] It is critical to note, however, that our analysis in *Sommer* was addressed to Monga's right to press an appeal while persisting in contumacy and avoiding a capias for his arrest; neither the IRA's exempt status nor the receivership were before the court in that appeal, and that decision does not hold that Monga waived any rights relating to the receivership or collection of the judgment. Long held principles of due process limit the application of that reasoning to Maharaj's right to be heard on the merits of her claim.

In reaching our decision in *Sommer*, we made clear that dismissing Monga's appeal did not implicate due process concerns. *Id.* at 764-765. In so stating, we relied in part on *National Union of Marine Cooks & Stewards* v. *Arnold*, 348 U.S. 37, 41, 44-45 (1954), in which the Supreme Court, dismissing the appeal of a party in contempt, was careful to distinguish the right to an appeal, which is a creature of statute, from the right to a trial, which derives from the due process clause of the United States Constitution. *Id.* at 41-42. With respect to the latter, the Supreme Court referenced the seminal case of *Hovey* v. *Elliott*, 167 U.S. 409 (1897), with an explanation that bears repeating:

> "The constitutional objection raised by petitioner was long ago considered in *Hovey* v. *Elliott*, 167 U.S. 409. In that case, the Supreme Court of the District of Columbia went further and attempted to deprive a defendant of his right to answer the suit brought against him. Having stricken defendant's answer, the court entered judgment against him as a punishment for his refusal to deliver to a court-appointed receiver certain funds which were the subject matter of the litigation. When the State of New York later refused to honor that judgment, this Court, in affirming the action of the Court of Appeals of New York, held that the District of Columbia had deprived defendant of his property without due process of law by denying him his constitutional right to a day in court."

*National Union of Marine Cooks & Stewards* v. *Arnold*, 348

---

[9]For simplicity's sake, when we refer to Maharaj's claim to the IRA accounts we include the claim of Monga's estate.

U.S. at 41-42. See *Hammond Packing Co.* v. *Arkansas,* 212 U.S. 322, 350 (1909) (*Hovey* prohibited a denial of the right to defend as a "mere punishment" for the defendant's refusal to follow a court order to pay disputed sums into court). Our Supreme Judicial Court acknowledged the principle in *Campbell* v. *Justices of the Superior Court,* 187 Mass. 509, 510-511 (1905), citing *Hovey* v. *Elliott, supra,* for its holding that the denial of a defendant's right to present his defense because of a contempt would be a taking of property without due process of law.[10]

Our decision in no way undermines the basic principle that a party may forfeit his or her right to an appeal where he or she does not purge himself or herself of contempt. The subject of the instant appeal, however, deals with receivership issues that arose after this court's decision in *Sommer* v. *Monga, supra.* Review of the litigation reveals that those issues were indeed viewed as separate and distinct from the litigation that resulted in our 1994 decision. Indeed, the Superior Court judge's June 1, 1995, decision on the receiver's request for a preliminary injunction noted that the receiver had filed a substitute complaint seeking a determination "whether the various mutual fund IRA accounts are valid IRA accounts and, as such, allegedly exempt from attachment by creditors." We conclude that the denial of Maharaj's right to a hearing on the merits, in reliance on our reasoning in *Sommer* v. *Monga,* 35 Mass. App. Ct. 764-765, was error.

The fund defendants offer alternative grounds to justify the judge's action, none of which we find persuasive on this record. They point to the trial court's inherent power to enforce its own orders. It is widely recognized, however, that the court's inherent power to strike a defense and enter judgment against a defendant "is limited by the necessity giving rise to its exercise." *Degen* v. *United States,* 517 U.S. 820, 829 (1996).[11]

[10]The case of *Goya Foods, Inc.* v. *Unanue-Casal,* 275 F.3d 124 (1st Cir.), cert. denied, 537 U.S. 1002 (2002), relied upon by the receiver and fund defendants here, involved dismissal of an appeal in response to the defendants' flight from the jurisdiction to avoid a money judgment against them. It is not instructive regarding the denial of a right to trial on the merits.

[11]*Degen* involved the application of the fugitive disentitlement doctrine, the analysis of which was subsequently codified in the Civil Asset Forfeiture

See *Yousif* v. *Yousif,* 61 Mass. App. Ct. 686, 689 (2004). Here, the judge pointed to Monga's "continued defiance" in refusing to turn over the IRA accounts as the reason for denying Maharaj the opportunity to present a defense to the application of those accounts toward the underlying judgment. But the record indicates that the IRA accounts, as of June 1, 1995, had been frozen by the fund defendants, and that, by the time of the hearing in 1998, Maharaj had provided discovery regarding the accounts. Compare *Yousif* v. *Yousif, supra* at 690-691 (dismissal of the husband's appeal warranted because his flight from the jurisdiction seriously impaired the wife's ability to collect on her judgment).[12] The judge's order, striking Maharaj's claim to the IRA accounts, advanced no apparent purpose other than punishment for prior disobedience.[13]

The fund defendants additionally refer us to Mass.R.Civ.P. 41(b)(2), 365 Mass. 803 (1974), which permits a judge to dismiss an action when a plaintiff fails to prosecute his or her claim or to comply with a court order. By its express language,[14] rule 41(b)(2) applies only to a litigant in the role of a "plaintiff." In view of the procedural posture of this case, we would reject the application of rule 41 in any event. Apart from the fact that Monga was a defendant in the underlying action, Maharaj's claim that the IRA accounts were exempt from creditors arose in the context of supplemental proceedings, initiated by Sommer, to take possession of Monga's property in satisfaction of the judgment. Even ignoring the labels in the pleadings, Maharaj's claim can only fairly be viewed as a defense to the taking of arguably exempt property. Maharaj was not "in the

---

Reform Act of 2000, 28 U.S.C. § 2466 (2000).

[12]The cases appear to limit the sanction of default against a defendant to instances of truly egregious conduct, most typically for fraud on the court in the form of falsifying or destroying evidence. See, e.g., *Brockton Sav. Bank* v. *Peat, Marwick, Mitchell & Co.,* 771 F.2d 5, 11-12 (1st Cir. 1985), cert. denied, 475 U.S. 1018 (1986).

[13]The judge relied on the same reasoning to rule that Maharaj waived her right to defend against seizure of two accounts she held as trustee for her nephew. Based on our holding above, the judge could not properly deny Maharaj a hearing on the merits of the validity of those trust accounts, merely as punishment for her failure to turn over the trust accounts voluntarily.

[14]Rule 41(b)(2) provides, in relevant part: "On motion of the defendant, with notice, the court may, in its discretion, dismiss any action for failure of the plaintiff to prosecute or to comply with these rules or any order of the court."

customary role of a party invoking the aid of a court to vindicate rights asserted against another." *Societe Internationale Pour Participations Industrielles et Commerciales, S.A.* v. *Rogers*, 357 U.S. 197, 210 (1958). See generally *United States* v. *Pole No. 3172, Hopkinton*, 852 F.2d 636, 643 (1st Cir. 1988) (though technically a claimant, property owner's action to recover his property after seizure by the government was more in the nature of a response).

A final justification offered by the fund defendants for striking Maharaj's claim is Mass.R.Civ.P. 37(b)(2), as amended, 390 Mass. 1208 (1984), for failure to comply with the judge's discovery orders. While the record contains numerous accounts of Monga's disobedience of various discovery orders over the course of the postjudgment proceedings, the judge's memorandum of decision makes only passing reference to such instances, and there is no dispute that Maharaj had produced the documents pertaining to the IRA accounts by the time of the summary judgment proceedings.[15] Again, to avoid running afoul of due process protections, "the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Insurance Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). In these circumstances, Monga's earlier recalcitrance in providing discovery about his assets would not support the judge's decision to strike Maharaj's claim to the IRA accounts in 1998.

Based on the foregoing, we find erroneous that portion of the judge's October 8, 1998, order forfeiting Maharaj's right to challenge the seizure of the IRA accounts, and we remand the case to the Superior Court for a hearing on the merits of her claim that the IRA accounts were valid and statutorily protected from Monga's creditors. But we affirm the judge's dismissal of the fund defendants from any further proceedings in the Superior Court on the matter.[16] Nothing in our decision changes the fund defendants' entitlement to their fees and expenses, to be paid

---

[15]In fact, the record indicates that the receiver had withdrawn his earlier motion for sanctions against Monga under rule 37(b)(2) by the time of the summary judgment proceedings.

[16]The judge also permanently enjoined Maharaj from "instituting or prosecuting against Vanguard, [Investors Fund Trust Company], or any of them, any proceeding in any [S]tate or United States court or administrative

from the IRA accounts. Those awards were grounded in the respective custodial agreements entered into between Monga and the fund defendants at the time he established those accounts.[17,18]

3. *Jurisdictional matters.* Maharaj insisted throughout the postjudgment proceedings that the Superior Court lacked personal jurisdiction over her, fashioning her submissions to the trial court with the designation "special appearance." The judge disagreed, ruling that the court's jurisdiction over Maharaj was established by her inclusion in the 1992 receivership orders. On appeal, Maharaj continues to object to personal jurisdiction, pointing out that she was never named a party, never received service of process, and moved to Florida one and one-half years before the 1992 order was issued appointing the receiver.

The record overwhelmingly establishes the Superior Court's jurisdiction over Maharaj. Pursuant to Mass.R.Civ.P. 65(d), 365 Mass. 834 (1974),[19] a nonparty who is aligned with a party, whether as an agent or employee or through participation with a

---

tribunal regarding the Monga IRA accounts." Maharaj maintains that the judge, sitting in a State court, lacked authority to issue injunctions restraining further actions against the fund defendants in Federal courts. On this point, the law is well-established in Maharaj's favor, and none of the appellees appear to contend otherwise. See, e.g., *Donovan* v. *Dallas*, 377 U.S. 408, 412-414 (1964); *General Atomic Co.* v. *Felter*, 434 U.S. 12, 16 (1977). The language in the judge's order enjoining Maharaj from filing suit in Federal court is to be struck.

[17]Article VI, § 6.3, of the Vanguard IRA Custodial Agreement, and Article 8 of the Investors Fiduciary Trust Company IRA Custodial Agreement, provided that custodial fees and reasonable expenses incurred in managing the accounts could be charged to the account.

[18]We dispose of the remaining issues raised on appeal concerning the receivership estate as follows: Maharaj argues that there was no basis for the Superior Court judge's order for the liquidation of Core and Subsurface in 1992. Our review of the record found ample support for the judge's order, given Monga's extended absence from the jurisdiction, and the companies' weak financial picture and uncertain prospects. Maharaj also claims that the judge erred in discharging Ottenberg because he failed to file annual reports with the Superior Court for the years 1996-2000, as required by Mass.R.Civ.P. 66, 365 Mass. 834 (1974). It appears from the record that this issue was not preserved for appeal.

[19]Rule 65(d) provides, in relevant part: "an injunction or restraining order . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

party, may be subject to the directives of an injunction so long as he or she received actual notice of the order. Maharaj does not dispute that she had actual notice of the June 12, 1991, injunction prohibiting the disposal of the assets of Monga and the companies. Maharaj was present at the trial, and she functioned as Monga's law clerk throughout the proceedings. Her affidavit stated that she herself went to Superior Court on July 17, 1991, to obtain copies of the judge's orders. As to her active concert and participation with Monga, the record is replete with evidence, which is no longer open to dispute,[20] concerning their jointly held properties and bank accounts and the ongoing mingling and dispersing of their assets and those of the companies after the injunction was issued. Monga himself described Maharaj as a "key employee" of Core and Subsurface, and the record demonstrates that she continued to draw significant amounts of money from the bank accounts of those companies after the injunction was issued. Based on those facts alone, Maharaj came within the injunction's reach.

Because the record makes clear that Maharaj aided and abetted Monga in disobeying the injunction, Maharaj became "liable to the same process for enforcing obedience to the order as if [she] were a party" pursuant to Mass.R.Civ.P. 71, 365 Mass. 837 (1974).[21] See *Bird* v. *Capital Site Mgmt. Co.*, 423 Mass. 172, 178-179 (1996). See Reporters' Notes to Mass.R.Civ.P. 71, Mass. Ann. Laws, Rules of Civil Procedure, at 466 ("An order against such a person may be enforced by the same methods as if the person were a party"), citing 12 Wright & Miller, Federal Practice & Procedure 82 (1973). Issuance of the receivership orders was the judge's remedial response to Monga's and Maharaj's repeated violations of the injunction. As a consequence, the judge's findings of Maharaj's complicity with Monga's course of conduct, and Maharaj's contacts with the proceedings in the Superior Court, established personal jurisdiction over her sufficient to support her inclusion in the receivership orders.

---

[20]The brief of Monga's estate and Maharaj acknowledges that "for purposes of this appeal, the default contempt order is taken as established."

[21]Rule 71 provides, in relevant part: "when obedience to an order may be lawfully enforced against a person who is not a party, he is liable to the same process for enforcing obedience to the order as if he were a party."

See *Azarian* v. *Ettinger*, 13 Mass. App. Ct. 1077, 1077-1078 (1982).

For much the same reason, however, we reject Sommer's contention that Maharaj lacked standing to pursue this appeal under the usual rule that only a named party may appeal. Maharaj was expressly named in the receivership orders and had a direct interest in the IRA accounts as the named beneficiary. See, e.g., *Dopp* v. *HTP Corp.*, 947 F.2d 506, 512 (1st Cir. 1991) (nonparty appellant allowed "when a lower court specifically directs an order at a non-party or enjoins it from a course of conduct"); *United States* v. *Kirschenbaum*, 156 F.3d 784, 794 (7th Cir. 1998) (defendant's wife, a nonparty who did not intervene in the trial court, had standing to appeal an injunction that froze assets in her name). See also *Corbett* v. *Related Cos. Northeast, Inc.*, 424 Mass. 714, 718 (1997) (appeal permitted in rare instances where nonparty "has a direct, immediate and substantial interest that has been prejudiced by the judgment, and has participated in the underlying proceedings to such an extent that the nonparty has intervened 'in fact' ").[22]

Ottenberg, for his part, asserts that the appeal is moot and that we should decline to exercise appellate jurisdiction because Monga failed to obtain a stay pending appeal, the receivership estate was disbursed in 2000, and the receiver was discharged; hence, no funds remain from the IRA accounts should their validity be proven on remand. For this, Ottenberg relies primarily on an unpublished bankruptcy decision from the United States Court of Appeals for the Tenth Circuit, which, by its own terms, has no precedential value.

The United States Court of Appeals for the First Circuit has explained that, at least in the bankruptcy context, "[t]he failure to obtain a stay is not sufficient ground for a finding of mootness." *Rochman* v. *Northeast Util. Serv. Group (In re Public Serv. Co. of N.H.)*, 963 F.2d 469, 473 (1st Cir. 1992). This is true even if the absence of a stay results in consummation of a reoganization plan prior to resolution of the appeal. See *Institut Pasteur* v. *Cambridge Biotech Corp.*, 104 F.3d 489,

---

[22]We also disagree with Sommer that the appeal should be dismissed under the principles of *Goya Foods, Inc.* v. *Unanue-Casal*, 275 F.3d at 128 (appeal dismissed under the fugitive disentitlement doctrine). In that case, unlike Maharaj here, the appellants remained fugitives at the time of the appeal.

491 (1st Cir.), cert. denied, 521 U.S. 1120 (1997). Rather, "[t]he case is moot if the requested relief would be either inequitable or impracticable in light of the change in circumstances." *Rochman* v. *Northeast Util. Serv. Group (In re Public Serv. Co. of N.H.)*, 963 F.2d at 473 (footnote omitted). Significant among those circumstances would be the extent to which funds were distributed to third persons or to parties that are no longer within the court's jurisdiction. *Id.* at 475. See *Hicks, Muse & Co.* v. *Brandt (In re Healthco Intl., Inc.)*, 136 F.3d 45, 48-49 (1st Cir. 1998) (test of mootness of appeal from bankruptcy order was not met where there was no showing that distributions "could not be recovered with relative ease"). Compare *Rochman* v. *Northeast Util. Serv. Group (In re Public Serv. Co. of N.H.)*, 963 F.2d at 475 (appeal dismissed as moot where setting aside reorganization plan would involve $1.5 billion in financing arrangements and affect "many thousands of innocent third parties").

The same considerations should hold true in the case of an appeal from the outcome of receivership proceedings. See *Matter of the Receivership of Harvard Pilgrim Health Care, Inc.*, 434 Mass. 51, 59 n.11 (2001) (rejecting contention that the appeal was moot because the receivership had been terminated and the plan already implemented). Since the bulk of the assets from Monga's receivership estate were distributed among relatively few parties, most of whom, it appears, remain within the trial court's jurisdiction, we do not view the relief that may result on remand as so inequitable or impracticable as to render the appeal moot. See generally *Hayes* v. *Lichtenberg*, 422 Mass. 1005, 1006 (1996) (husband's appeal from a modification judgment that was subsequently terminated did not render his appeal moot, since he intended to seek repayment of monies he paid to wife under the judgment prior to its termination).

*Conclusion.* We vacate the order, entered October 8, 1998, and judgment on receivership, entered August 1, 2000. The case is remanded to the Superior Court for further proceedings and entry of such orders as are in accordance with this opinion.

*So ordered.*