SCOTT E. SOMMER, executor,[1] *vs.* SHANTEE MAHARAJ,
executrix,[2] & another[3]; VANGUARD FIDUCIARY TRUST
COMPANY & others,[4] third-party defendants.

Middlesex. April 2, 2007. - June 13, 2008.

Present: GREANEY, IRELAND, SPINA, & CORDY, JJ.

*Judgment,* Satisfaction. *Receiver. Practice, Civil,* Receiver, Dismissal. *Individual
Retirement Account.*

In the extraordinary circumstances of a civil action, the Superior Court judge
acted within her authority in determining that the defendant, individually
and as executrix of a particular decedent's estate, had forfeited the right to
contest the actions of the receiver of the estate in seizing and distributing
funds held in certain individual retirement accounts to satisfy a judgment
entered against the decedent in an underlying breach of contract and
fiduciary duty litigation, where the defendant's and decedent's conduct,
including flouting court orders, in a deliberate attempt to circumvent en-
forcement of the judgment, was unquestionably unreasonable. [620-622]

CIVIL ACTION commenced in the Superior Court Department on
May 8, 1989.

Following review by the Appeals Court, 65 Mass. App. Ct.
657 (2006), additional postjudgment motions were heard by
*Judith Fabricant,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Peter S. Brooks* for the plaintiff.

*John C. Ottenberg,* pro se.

*John R. Baraniak, Jr.,* for Vanguard Fiduciary Trust & others.

[1]Of the estate of Paul F. Sommer.

[2]Of the estate of D. Dev Monga, the original defendant, who died in 1996.
Shantee Maharaj, his widow, was eventually appointed the executrix of his
estate.

[3]John C. Ottenberg, receiver of D. Dev Monga; Core Environmental
Resources, Inc.; and Subsurface Technologies, Inc.

[4]Vanguard/Morgan Growth Fund, Inc.; Dreyfus Founders Funds, Inc.; Citadel
Service Co., Inc.; Investors Fiduciary Trust Company; and Shantee Maharaj.

*John G. S. Flym* for Shantee Maharaj.

*Kristin Moody,* for Dreyfus Founders Funds, Inc., was present but did not argue.

CORDY, J. Paul F. Sommer and D. Dev Monga were business associates with interests in two corporations controlled by Monga. Shantee Maharaj was Monga's wife and an employee of the corporations. In the breach of contract and fiduciary duty litigation (brought by Sommer against Monga and the corporations) underlying this case, a jury returned a verdict in favor of the plaintiff, Sommer, on June 7, 1991. What followed were years of contumacious conduct by the principal defendant at the time, Monga, in an effort to conceal assets and avoid paying the judgment. Seventeen years later, the litigation has survived both of their deaths.

The principal issue before the court is whether the defendant, Shantee Maharaj, individually and as the executrix of the estate of Monga (decedent),[5] has forfeited the right to contest the seizure and distribution of funds held in certain individual retirement accounts (IRA accounts) to satisfy the judgment entered against Monga in favor of Sommer. A Superior Court judge allowed the receiver, John C. Ottenberg, to access and distribute the IRA accounts without affording Maharaj the opportunity to contest, as she wished to, the seizure of the accounts, which may be protected by statute from the claims of creditors. On appeal, in 2006, the Appeals Court vacated the judgment insofar as it allowed the receiver to distribute the IRA assets. *Sommer* v. *Maharaj,* 65 Mass. App. Ct. 657, 669 (2006) (*Sommer II*). We granted the application for further appellate review of the receiver and the estate of Sommer and now affirm the judge's decision.[6]

1. *Background.* After receiving a judgment in the amount of $482,904, Sommer set about trying to enforce it.[7] As part of

[5]We refer to Shantee Maharaj in her dual roles as the executrix of Monga's estate and as an individual defendant simply as Maharaj.

[6]We affirm all aspects of the Superior Court judge's October 8, 1998, decision and order that is the subject of this appeal, save for that portion of the decision permanently enjoining Maharaj from prosecuting Vanguard Fiduciary Trust Company; Vanguard/Morgan Growth Fund, Inc.; Dreyfus Founders Funds, Inc.; or Investors Fiduciary Trust Company in any Federal court. On this point we agree with the Appeals Court that the judge had no authority to issue such an injunction. *Sommer* v. *Maharaj,* 65 Mass. App. Ct. 657, 665-666 n.16 (2006) (*Sommer II*).

[7]For details of the underlying dispute leading to the judgment see *Sommer*

that process, he sought and secured a permanent injunction prohibiting Monga and his business corporations from transferring or otherwise disposing of their assets. Maharaj was fully cognizant of that injunction. The injunction had little effect. As recounted in greater detail in prior decisions of both the Superior Court and the Appeals Court, Monga and Maharaj engaged in a seemingly endless series of actions to avoid paying the judgment.[8] These actions included extensive commingling and diversion of the corporations' assets, and the concealment of hundreds of thousands of dollars of Monga's assets.[9] They also included the harassment of third parties who had relevant financial information sought by Sommer, based on which a second injunction was entered against Monga.

We briefly recount the relevant facts and events that brought the case to its current posture.[10] In June and July of 1992, a Superior Court judge entered two critical orders for the purpose of securing assets for the enforcement of the judgment. First, she found Monga in contempt for failing to provide discovery, and for transferring assets in violation of the permanent injunction entered after judgment. In light of Monga's failure to appear to answer on the contempt complaint, she also issued a capias for his arrest. Monga, who had left the jurisdiction, never purged himself of this contempt. Second, based on findings with respect to the conduct of Monga and Maharaj in diverting and concealing assets that ought otherwise be available to satisfy the judgment, the judge appointed a receiver. The receiver was directed to "collect, receive and take possession and charge of all [the] assets" of Monga and Maharaj. Monga and Maharaj were also ordered "to

v. *Monga,* 35 Mass. App. Ct. 761 (1994) (*Sommer I*), Monga's appeal from the judgment, and *Sommer II, supra,* the decision that led to the application for further appellate review.

[8]In addition to the Superior Court decision that is the subject of this appeal, see *Sommer I, supra,* and *Sommer II, supra.*

[9]Some of the details of such conduct are set forth in comprehensive affidavits filed in support of Sommer's motion for the appointment of a receiver in July, 1992.

[10]A complete iteration of their actions, and the numerous proceedings that resulted, in a number of courts, is impractical. The facts detailed in the prior decisions and opinions of the lower courts paint a sufficient, but still only a partial picture. The Superior Court docket in the present action alone includes more than 500 filings.

deliver to said receiver all the property, moneys, stock in trade and effects of every kind and nature . . . in their . . . possession or control, together with all books, deeds, documents, vouchers, and papers relating thereto." It is apparent from the record that neither Monga nor Maharaj delivered any property to the receiver, and, at least during the six years that preceded the receiver's filing of a motion for summary judgment on his amended substitute complaint (in July, 1998), never delivered any records either.

After identifying the IRA accounts, the receiver secured a court order directing that they be transferred to, and held and administered by, him until entitlement to the IRA assets was determined.[11] The companies managing the IRA accounts — Vanguard Fiduciary Trust Company; Vanguard/Morgan Growth Fund, Inc.; Dreyfus Founders Funds, Inc.; and Investors Fiduciary Trust Company (collectively, the fund defendants) — did not initially turn over the accounts to the receiver, in part because Monga threatened to sue them if they did so. The fund defendants did, however, freeze the accounts and, in 1995, in response to the receiver's complaint to effect turnover of the accounts, filed a counterclaim and a cross claim in interpleader, seeking to be relieved of liability for the accounts. Monga then sued the funds in Pennsylvania, setting off a complex series of proceedings in State and Federal courts in Pennsylvania and Massachusetts,[12] all of which appear to have been eventually dismissed.[13]

In January, 1994, Monga's appeal in the underlying breach of contract and fiduciary duty action was decided. The Appeals Court ordered that the appeal be dismissed unless, within sixty days of the issuance of the rescript, Monga surrendered on the outstanding capias and purged himself of contempt. *Sommer* v.

---

[11]The order appointing a receiver was "clarified" on July 6, 1992, specifically to include the transfer to the receiver of the IRA account with the Vanguard Fiduciary Trust Company. Additional orders were entered with respect to other IRA accounts as they were identified.

[12]After Monga commenced the Pennsylvania action, the funds moved for interpleader in both the Massachusetts and Pennsylvania actions, seeking authorization to deposit the value of the accounts into court and to be relieved of all further involvement.

[13]In this series of proceedings, sanctions were twice imposed against Monga and Maharaj in the United States District Court for the District of Massachusetts (once in 1996 and again in 1997) for the filing of frivolous pleadings. These sanctions remained unpaid as of October, 1998.

*Monga,* 35 Mass. App. Ct. 761, 765 (1994) (*Sommer I*). Monga failed to do so, and in June, 1994, an order of execution was issued pursuant to the underlying judgment. In light of the contempt, of which Monga had not purged himself, the sum of $100,000 was added to the judgment as penalty. On July 8, 1994, a Superior Court judge ordered all creditors to file proof of claims with the receiver by September 15, 1994. Monga appears to have filed three proofs of claim, one for "vacation pay," one for "Internal Revenue Taxes," and a third for "Legal Fees." Neither Monga nor Maharaj filed claims with respect to the IRA accounts which had been ordered turned over to the receiver, but which remained held by the fund defendants, albeit in a frozen state, due to the threat, by Monga, of litigation. As noted above, this threat was realized when the fund defendants sought interpleader relief.

After Monga passed away in 1996, Maharaj, the beneficiary of the IRA accounts, demanded that the fund defendants pay the IRA assets to her. The fund defendants refused, and the IRA accounts were ultimately ordered turned over to the receiver, and then disbursed as part of the receivership estate. The judge's order of October 8, 1998, which allowed the receiver's motion for summary judgment effecting the surrender of the funds to him, is the subject of this appeal.[14]

In ordering that the IRA accounts be transferred to the receiver and ultimately disbursed as part of the receivership estate, the judge refused to consider Maharaj's claim that the IRA assets were protected by statute from the claims of creditors, and therefore could not be reached to satisfy the judgment against Monga. The judge's basis for so doing was that Monga's continued defiance and flouting of court orders "stripped him of all right to assert claims of statutory exemption" for the IRA accounts. He had, in other words, forfeited his right to make any such claims by his continued disobedience. In the judge's view, Maharaj's claim to the IRA accounts, as the beneficiary, derived entirely from Monga. Because Monga had forfeited the right to retain them, nothing remained to pass to her on his death.

---

[14]On August 1, 2000, final judgment entered on the receivership, and the monies were disbursed. The receiver filed a certificate of compliance on September 13, 2000.

In reaching her decision, the judge relied in part on the Appeals Court's decision in *Sommer I, supra* at 761, in which the Appeals Court ultimately dismissed Monga's appeal from the underlying judgment against him on the basis of his flagrant disobedience of court orders. Because Monga had already, by the time his appeal was heard, disobeyed any number of court orders, was in contempt, and was subject to an outstanding capias for his arrest, the Appeals Court held that "[d]epriv[ing him] of the right to pursue an appeal" did not violate either due process or equal protection. *Sommer I, supra* at 765. The judge, in turn, similarly determined that Monga's, and Maharaj's, actions warranted depriving Maharaj of the right to assert any claims to the IRA assets. On appeal from that decision, however, the Appeals Court concluded that denying Maharaj's right to a hearing on the merits of her claim to the IRA assets, in reliance on the court's reasoning in *Sommer I*, was error. *Sommer II, supra* at 663. In the Appeals Court's view, the issues involving the IRA accounts were not before the court when it decided *Sommer I*. Further, as the court noted, the right to appeal differs from the right to a trial. *Sommer II, supra* at 662. The Appeals Court also rejected the fund defendants' argument that the trial court has the inherent power to enforce its own orders and to enter a judgment against Maharaj, stating in a footnote that "[t]he cases appear to limit the sanction of default against a defendant to instances of truly egregious conduct . . . ." *Id.* at 664 n.12. The Appeals Court vacated the judge's order and judgment on receivership and remanded the case for further proceedings.

2. *Discussion.* We agree with the Appeals Court that the issue of the exempt status of the IRA accounts was not specifically before that court in *Sommer I*, and that depriving a party of a right to appeal differs from depriving a party of a right to a trial on the merits.[15] This case, however, is the rare example of one involving conduct so egregious as to warrant the forfeiting of a right to be heard. We do not take lightly our decision that the

---

[15]The IRA accounts were, however, among the assets that Monga was originally enjoined from disposing of, transferring, or otherwise alienating. Monga's actions in ignoring the injunction, and in failing to disclose the very existence of the IRA accounts, led to the dismissal of his appeal. The IRA accounts, then, were not so separate from what was happening at the time of *Sommer I* as the Appeals Court seems to suggest.

actions of Monga and Maharaj lead to such a result — certainly depriving a party of the right to be heard on the basis of that party's conduct is the most severe of sanctions — but the extreme facts of this case countenance such a decision.

The Superior Court has, as the fund defendants, the receiver, and Sommer suggest, the inherent power to enforce its own orders, "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Brockton Sav. Bank* v. *Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11 (1st Cir. 1985), cert. denied, 475 U.S. 1018 (1986), quoting *Link* v. *Wabash R.R.*, 370 U.S. 626, 630-631 (1962). It has long been understood that courts have the "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 43 (1991), quoting *Anderson* v. *Dunn*, 6 Wheat. 204, 227 (1821). See, e.g., *John's Insulation, Inc.* v. *L. Addison & Assoc., Inc.*, 156 F.3d 101, 108 (1st Cir. 1998) (discussing court's inherent power to impose sanctions beyond authority granted by Federal Rules of Civil Procedure). That power, to "be exercised with restraint and discretion," *Chambers* v. *NASCO, Inc.*, *supra* at 44, includes dismissal of a lawsuit, when justified by a party's extreme conduct.

Among the pertinent considerations in determining whether conduct warrants dismissal are "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." *Robson* v. *Hallenbeck*, 81 F.3d 1, 2 (1st Cir. 1996). "As a minimal requirement, there must be convincing evidence of unreasonable conduct or delay. A judge should also give sufficient consideration to the prejudice that the movant would incur if the motion [to dismiss] were denied, and whether there are more suitable, alternative penalties." *Monahan* v. *Washburn*, 400 Mass. 126, 128-129 (1987).

Although "dismissal" is not technically what has occurred in this case, the rationale for dismissing a case on the basis of a party's conduct is applicable in this instance where the forfeiture of Maharaj's right to be heard on her claim to the IRA assets is based on the actions of herself and Monga. The conduct at

issue here was unquestionably unreasonable. In short, Monga and Maharaj did everything they could to keep Sommer from enforcing the judgment. Court orders were flouted at every turn, and the conduct in which they engaged could not have been more deliberate. Further, the prejudice suffered by Sommer, and now his estate, is palpable. Not only was there an extreme delay in payment of the judgment, but the conduct resulted in significant portions of the receivership estate being paid to cover the costs of years of litigation, in numerous courts, reducing the amount available to satisfy the judgment. In the exceptional circumstances of this case, no lesser sanction would be suitable.

Additionally, a sanction imposed for noncompliance with court orders "serve[s] not only to punish the offending party but also to deter putative offenders in future cases." *Figueroa Ruiz* v. *Alegria*, 896 F.2d 645, 649 (1st Cir. 1990). Cf. *National Hockey League* v. *Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) ("the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent"). A decision here that Maharaj has forfeited her right to pursue her claim to the IRA assets because of the contumacious conduct of Monga, which she facilitated, serves not only to sanction that conduct, but also as an indication that such conduct is not to be tolerated.

3. *Conclusion.* In the extraordinary circumstances of this case, the judge acted within her authority in imposing an extraordinary sanction. If the conduct at issue here does not warrant such a sanction, we are hard pressed to imagine what would.

The October 8, 1998, decision of the Superior Court judge is affirmed in all respects except the portion that permanently enjoins Maharaj from prosecuting the fund defendants in any Federal court. The judgment on receivership is affirmed.

*So ordered.*