Macdonald, D. Lloyd, J.
Before the Court are variously styled motions filed by plaintiffs and defendants in the consolidated actions requesting sanctions against the plaintiff Cheng Lee Co. (“Cheng Lee”) and its attorneys, Richard Goren (“Goren”) and Bodoff & Associates (“Bodoff’). The incident giving rise to the motions (to be more fully described below) involved a solicitation of new clients by Goren to bring additional claims against the defendants as the parties (plaintiffs and defendants) were on the cusp of a global settlement, a settlement that purportedly included Cheng Lee.
Because Goren and, derivatively, Cheng Lee committed an egregious breach of honest dealing that has caused material harm to the parties and to the Court, the Court ALLOWS the substance of the motions.
The Litigation
The consolidated cases involve a complex set of claims that were brought in the wake of the attempted sale of a Boston-based chain of Asian food markets, the defendant Super 88 stores. There are three groups of plaintiffs: (a) the vendors (the “Trade Creditors”) (one of which is Cheng Lee and the others of which include the “Hop Lee” plaintiffs (SUCV2009-03959-E) and the “Tin World” plaintiffs (SUCV2009-03680-E), (b) former employees asserting class action wage claims (the “Workers”) (SUCV2009-04154-H) and (c) aggrieved attempted purchasers of certain of the stores (the “Asset Purchasers”) (SUCV2009-03473-E and SUCV2009-03472-E). The defendants include the Super 88 principals and corporate entities (George Luu et al.), the New York-based prospective purchaser of the stores, the Hong Kong Supermarket defendants (“Hong Kong”) and a group of lender institutions (Wellesley and Haymarket Capital et al.) (the “Lenders”) with historical banking relationships with the Super 88 principals and entities. Collectively, the litigation is referred to as “Super 88.”
At the outset, the cases were drawn randomly to three separate Suffolk Superior Court sessions. However, in June 2010 in order to promote the efficient handling of the cases, they were consolidated by the Regional Administrative Judge. Then in an order of July 13, 2010, the Chief Justice of the Superior Court specially assigned them to the undersigned justice.
Through the summer and the early fall of 2010, there was active motion practice and resulting court orders in all of the consolidated cases. These included requests for injunctions and amendment of the same, discovery disputes, summary judgment, sanctions, amendment of complaints to add parties, dismissals and withdrawal of the same. In mid-October, counsel in the Workers case moved for a Rule 16 conference. Without opposition from the other parties, the Court allowed the motion and ordered that the Rule 16 conference be held in December and be combined with an omnibus hearing on the multiple motions then pending. Pursuant to the Court’s procedural order, counsel cooperated in preparing a comprehensive report and agenda for the Rule 16 conference. The conference was to be held in the Fall River Superior Court, where the undersigned justice was assigned at the time.
On December 10th, counsel for all parties in the consolidated actions appeared in Fall River. In lieu of proceeding directly to the conference, however, counsel (with the approval of the Court) used the occasion to engage in substantive settlement discussions. The latter were fruitful, and after several hours, counsel (including Goren on behalf of Cheng Lee) reported to *276 the Court that a potential framework for settlement had been reached. Counsel requested a continuance of the Rule 16 conference and the motions hearing to permit the settlement framework to be further implemented. The Court allowed the continuance and encouraged counsel’s efforts.
Thereafter, the Court further continued the Rule 16 conference and omnibus motions hearing on the representation by counsel that substantial progress was being made toward settlement. After several interim procedural orders, March 18th was set for counsel to report the terms of a final settlement (in lieu of which the Court would proceed to the Rule 16 conference and the omnibus motions hearing).
On March 18th, counsel appeared in New Bedford, where the undersigned justice was sitting, and reported that, just days before, the global settlement to which they were working and as to which all material terms appeared to have been agreed to had foundered. The reason was that Attorney Goren the prior week had made a written solicitation to all known trade creditors of Super 88 informing them of his having achieved a 100 cents on the dollar recovery for Cheng Lee (without naming Cheng Lee) and inviting them to contact him if interested in retaining his and Bodoff s services. Among the creditors to whom Goren wrote were existing clients of counsel for the Tin World and Hop Lee plaintiffs. Because certain of the Trade Creditors had earlier agreed to compromise their claims as part of the settlement structure, the Goren-induced prospect of a better deal caused some to rescind their agreement to settle.
Counsel for all plaintiffs, defendants and the lenders strenuously urged the Court to sanction Goren immediately for his solicitation of other counsel’s clients and causing the collapse of the settlement. In response, the Court issued a procedural order whereby Goren was to communicate his explanation of his conduct to other counsel by March 21st, any motions for sanctions were to be filed by March 29th and a hearing on any sanctions motions and/or on settlement status was to be held on April 8th in the Suffolk E Session (to which the undersigned justice would be returning by that point in the calendar).
Multiple sanctions motions were, in fact, thereafter filed. At the April 8th hearing, settlement was reported as dead and counsel urged various sanction remedies against Goren, Cheng Lee and Bodoff on account of it. The principal of the Bodoff firm appeared at the hearing in defense of Goren’s alleged misconduct.
Nature and Scope of the Court’s Authority to Sanction
“Judges have the inherent power to do whatever may be done under the general principles of jurisprudence to insure [the integrity of the judicial process]. Simply stated, implicit in the constitutional grant of judicial power is ‘authority necessary to the exercise of . . . (that) power.’ ‘(E)veiy judge must exercise his inherent powers as necessary to secure the full and effective administration of justice.’. . . Exercising this power, a judge may impose reasonable court costs on an attorney who . . . delays the adjudication of legitimate claims and defenses, unnecessarily increases clients’ litigation expenses, and squanders limited judicial resources. A judge ‘cannot condone behavior that causes precious time to be wasted away while the court, parties, court personnel, and witnesses [otherwise diligently conduct themselves].’ ” Beit v. Probate and Family Court Dept., 385 Mass. 854, 859-60 (1982) (internal citations omitted). Accord Sommer v. Maharaj, 451 Mass. 615, 621 (2008), and Commonwealth v. Matranga, 455 Mass. 45, 49 (2009).
“A sanction may likewise be imposed for a disobedience of a court order or for conduct which flouts the authority of the court or obstructs and impedes the orderly course of a legal proceeding.” Avelino-Wright v. Wright, 51 Mass.App.Ct. 1, 5 (2001). See also Clark v. Clark, 47 Mass.App.Ct. 737, 743-44 (1999).
“Any monetary award, however, should be tailored to the resources wasted or unnecessarily expended as a result of the misconduct.” Avelino-Wright, 51 Mass.App.Ct. at 5.
The Misconduct
A number of counsel have framed their sanction motions in terms of the Rules of Professional Conduct, SJC Rule 3:07. Bodoff on Goren’s behalf argued that this Court is without jurisdiction to rule on compliance with the canons of the profession. In a technical sense, that is true. Exclusive jurisdiction for discipline lies in the first instance in the hands of the Board of Bar Overseers and ultimately the SJC. Nevertheless, the content of the Rules of Professional Conduct may inform the Court’s assessment of whether Goren acted unreasonably such as to have impeded “the full and effective administration of justice” and “delay[ed] the adjudication of legitimate claims and defenses ... and squandered] limited judicial resources.” Beit, supra
Unquestionably, Goren did so. The Court placed on hold its earlier effort to move the consolidated cases to prompt trial on counsel’s representation in December, joined by Goren, that they had agreed on a settlement framework but that time was needed to finalize it. The Court relied on the good faith of all counsel, as officers of the Court, in representing to the Court that they were engaged diligently in the global settlement effort. It is apparent to the Court that—but for one participant—they were in fact so engaged.
In a case of this complexity (involving workers, creditors, lenders, corporate asset purchasers and a multi-store going concern) there are many moving parts and intersecting planes of interest. Settlement under such circumstances requires imagination and flexibility while counsel remain loyal to their client’s respective interests.
*277 The Court has been informed that a critical element in the progress toward settlement was the recognition and acceptance of the circumstance that a finite amount of money was available to fund the settlement, and thus that compromise of claims was necessary. As of mid-March, an accommodation had apparently been reached. The Workers (whose Wage Act claims— on paper—held out the prospect of triple damages, were prepared to accept a partial recovery and to permit the sale of one of the Super 88 stores as a way to generate cash to fund the settlement. The Lenders, who were recently dismissed from the consolidated case (Paper #12 in SUCV2010-04961-F), were, nevertheless, willing to subordinate their secured position with regard to the Super 88 defendants’ assets, to permit the sale of one of the stores as a means to underwrite the settlement. Certain of the Trade Creditors (with the exception of Cheng Lee) also compromised.
All the above was conducted in confidence because of the parties’ awareness that if additional claimants appeared, the finite settlement fund would be further diluted and (if a critical mass of new claims were filed) a bankruptcy petition could be triggered that would have left all the plaintiffs without a practical remedy.
It was into this environment that Goren sent his solicitation to the 110 entities listed as Super 88 creditors on its earlier (unsuccessful) bankruptcy filing. As noted, Goren wrote to the creditors of the prospect of Cheng Lee’s recovering “100 cents on the dollar” and offering his and Bodoff s services to them so they could recover. Also as noted, five of the creditors Goren solicited were already represented by Trade Creditor counsel, a fact that Goren knew or should have known. Goren’s conduct appears to have been a direct violation of Rule 4.2 of the Rules of Professional Conduct. Furthermore, the veiy act of solicitation and its communication of the prospect of a recovery by third parties breached the assumption of confidentiality, which was central to the prospect of achieving settlement. Further, it risked fomenting a new class of claimants whose interests would be adverse necessarily to the settling parties.
As a participant in the settlement negotiation, Goren was subject to Preamble 2 of the Rules of Professional Conduct: “As negotiator, a lawyer seeks a result advantageous to his client but consistent with honest dealing with others.” Goren’s conduct was fundamentally dishonest toward his co-counsel and a breach of his core professional duty of good faith and fair dealing with other counsel. Further, it was a fundamental breach of his duty of candor to the Court. Rule 3.3 of the Rules of Professional Conduct.
The impact of Goren’s conduct on the administration of justice, the Court’s most immediate concern, has been stark. The progression of the consolidated cases to a fair and prompt disposition has been obstructed. Three months of diligent and expensive lawyers’ time has been wasted. And the assumption on which the Court relied in staying the cases has been shown to have been based on a false premise. The Court has been materially prejudiced.
Sanctions
As noted above, any sanctions order must be “tailored to the resources wasted or unnecessarily expended as a result of the misconduct.” Avelino-Wright, 51 Mass.App.Ct. at 5. Further, as the SJC recently stated by citing the Supreme Court of the United States: “(T]he most severe in the spectrum of sanctions . . . must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter putative offenders in future cases.” Sommer v. Maharaj, 451 Mass. at 622, quoting National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976).
With that framework in mind, the Court orders that Goren and Cheng Lee, jointly and severally, reimburse all parties in the consolidated cases their necessary and reasonable attorneys fees and expenses incurred from December 10, 2010 through April 8, 2011 in connection with the effort to settle the litigation. Further, the Court vacates its order, dated August 4,2010 (Paper #27 in SUCV2010-00668-E), denying the Super 88 defendants’ motion for reconsideration of the Court’s entry of summary judgment in Cheng Lee’s favor. The Court sets aside the entry of summary judgment and restores the Cheng Lee case to the pretrial docket on a par with the other plaintiffs in the consolidated cases.
Because of what appears to have been breaches of the Rules of Professional Conduct, a copy of this memorandum and order will be referred to the Board of Bar Overseers for its review.
ORDER
1. The Tin World Plaintiffs’ (SUCV2009-03680-E) and the Hop Lee Plaintiffs’ (SUCV2009-03959-D) Motion for Sanctions, or Alternatively Motion for Equitable Relief is ALLOWED IN PART.
2. The Workers Plaintiffs’ (SUCV2009-04154-H) Motion for Miscellaneous Relief is ALLOWED IN PART.
3. The Hop Lee Plaintiffs’ (SUCV2009-03959-D) Concurrence and Joinder in Plaintiff Worker’s Motion for Miscellaneous Relief is ALLOWED IN PART.
4. The Super 88 Defendants’ Motion for Sanctions is ALLOWED IN PART.
5. Attorney Richard Goren and plaintiff Cheng Lee Co., Inc. shall reimburse all parties in the consolidated cases their necessary and reasonable attorneys fees and expenses incurred from December 10, 2010 through April 8, 2011 in connection with the effort to settle the litigation and respond to the solicitation by Attorney Richard Goren. Their liability in this regard is joint and several.
*278 6. Within 14 days of the entry of this order, the parties whose counsel engaged in the settlement effort shall file affidavits of their necessary and reasonable attorneys fees and expenses referenced in numbered paragraph 5. Such filing shall include a specification of tasks performed, personnel who performed such tasks, the time expended and the billing rates charged.
7. Within 14 days of the filing of the parties’ affidavits of fees and expenses, plaintiff Cheng Lee Co., Inc. and Attorney Richard Goren may file a response to such affidavits.
8. The session clerk shall schedule a hearing on legal fees and expenses upon the submission by Cheng Lee Co., Inc. and Attorney Richard Goren of a response that takes issue with any of the affidavits earlier filed.
9. Within 30 days of the entry of the Court’s ruling as to the necessary fees and expenses to be reimbursed, Cheng Lee Co., Inc. and Attorney Richard Goren shall make full payment to the parties to be reimbursed.
10. The Court’s order dated August 4, 2010 (Paper #27 in SUCV2010-00668-E) is VACATED. The Super 88 defendants’ Motion to Reconsider Summary Judgment and/or Motion to Vacate Summary Judgment (Paper #26 in SUCV2010-00668-E) is ALLOWED nunc pro tunc to August 4, 2010. The Court sets aside the entry of summary judgment and restores the Cheng Lee case to the pretrial docket.
11. A copy of this memorandum and order shall be communicated to the Board of Bar Overseers.