## L.F. *vs.* L.J.

No. 06-P-1735.

Suffolk. November 7, 2007. - May 30, 2008.

Present: KAFKER, SMITH, & KATZMANN, JJ.

*Practice, Civil,* Appeal, Dismissal of appeal, Contempt, Findings by judge. *Abuse Prevention. Protective Order. Contempt. Jurisdiction,* Probate Court. *Probate Court,* Jurisdiction, Findings by judge.

This court declined to exercise its power to order, as a sanction, dismissal of the defendant's appeal from a judgment holding her in contempt for violating a G. L. c. 209A order and disregarding certain other orders, where the defendant's actions in avoiding service of a capias did not materially prejudice the plaintiff's efforts to enforce the c. 209A order. [818-819]

A probate judge hearing a complaint for civil contempt correctly denied the defendant's motion to dismiss the complaint for lack of subject matter jurisdiction, where the claimed violative conduct, although taking place outside the Commonwealth, violated the integrity of a G. L. c. 209A order issued by a Massachusetts court. [819-820]

A probate judge properly found the defendant in civil contempt for violating a G. L. c. 209A order and disregarding certain other orders, arising from the defendant's contact and communications with the plaintiff's attorney, where the defendant, although permitted by the order to negotiate with the plaintiff's counsel regarding a related custody dispute, went outside the bounds of the order by threatening to obtain the defendant's custody demands through harassment and coercion of the plaintiff. [820-822]

A probate judge erred in ordering the posting of a bond as part of a judgment for contempt arising from the defendant's violation of a G. L. c. 209A order, where, although the record demonstrated the defendant's persistent conduct in violating court orders prior to the judgment of contempt, the judge failed to make the required findings regarding the effectiveness of the bond requirement or the defendant's financial resources. [822-824]

COMPLAINT for abuse prevention filed in the Suffolk Division of the Probate and Family Court Department on January 20, 2004.

A complaint for civil contempt, filed on September 22, 2005, was heard by *Nancy M. Gould,* J.

*David Duncan* for the defendant.

*Kristyn M. Snyer* for the plaintiff.

SMITH, J. The defendant, L.J., has appealed from a judgment holding her in contempt for violating a G. L. c. 209A order and disregarding certain other orders.

1. *Procedural history.* The plaintiff, L.F., is an attorney, licensed to practice in New York, New Jersey, and Florida, apparently now residing in either New York or New Jersey. The defendant is a physician, licensed in Massachusetts and residing at all relevant times in the Commonwealth.

Sometime in 2001, the plaintiff represented the defendant in a legal matter. They became romantically involved, and a child was born to the couple. The parties contested custody upon the child's birth, each contending that the other was an unfit parent. The Department of Social Services (DSS) became involved and filed a petition seeking to terminate the defendant's parental rights. See note 1, *infra.*

a. *The G. L. c. 209A order.* On January 20, 2004, the plaintiff and DSS filed complaints for abuse prevention orders pursuant to c. 209A against the defendant. Temporary restraining orders were issued. The orders prohibited the defendant from abusing the plaintiff "by harming, threatening or attempting to harm the Plaintiff physically or by placing the Plaintiff in fear of imminent serious physical harm, or by using force, or threat of duress to make the Plaintiff engage in sexual relations unwillingly."

The orders also prohibited the defendant from any contact with the plaintiff and the child, ordered the defendant to refrain from contacting the plaintiff and child "either in person, by telephone, in writing or otherwise, directly or through someone else, and to stay at least 200 yards from [the plaintiff and the child] even if the plaintiff seems to allow or request contact. Notification of court proceedings is permissible only by mail, or by sheriff or other authorized officer when required by statute or rule." The orders also required the defendant to stay away from the plaintiff's residence and his office in New York. The orders were later modified to exclude the defendant from the entire building in which the plaintiff's law office was located. The orders were made permanent on January 26, 2005. The defendant did not appeal the issuances of the orders.[1]

---

[1]On November 1, 2004, the child's attorney filed a complaint for contempt

b. *The New Jersey proceeding.* The contempt order arose out of a proceeding that took place in New Jersey. After the entry of the July 7, 2005, decree of the Probate and Family Court terminating the defendant's parental rights, the defendant, in September, 2005, filed a complaint in the Superior Court of New Jersey, Chancery Division, in which she sought custody of the child or visitation rights.[2] On September 29, 2005, the plaintiff; his attorney, Steven Draisin; and the defendant attended a hearing in New Jersey on the defendant's complaint. The hearing was rescheduled, and on that same day, the defendant asked Draisin if she could speak with him and the plaintiff. The plaintiff declined to speak with the defendant, but permitted Draisin to speak with her. Draisin then engaged in a twenty- to thirty-minute conversation with the defendant while sitting on a bench outside the court room. The plaintiff was not present, but sat nearby.

During the conversation, the defendant explained the background of the Massachusetts matter, alleged that the plaintiff had violated a fiduciary duty to her, and informed Draisin that she had already contacted the State bar associations where the plaintiff was licensed to practice, informing them of her belief that he had violated his fiduciary duty. She also stated that she planned to pursue a legal malpractice action in conjunction with his representation of her. The defendant further said that she had information that the plaintiff had committed a felony which would

against the defendant alleging, among other things, that the child was in continuous danger while with the defendant.

On November 10, 2004, a probate judge issued a contempt judgment against the defendant. The judge suspended all visits between the defendant and the child. In addition, the defendant was ordered to return various impounded documents to the Probate and Family Court. The defendant did not return the documents, and a capias was issued for the defendant's arrest. As of December 5, 2005, the child's attorney had not brought the capias forward for action.

On July 7, 2005, a decree was entered in the Probate and Family Court in regard to DSS's care and protection petition. The defendant's parental rights were terminated, the plaintiff was given custody of the child, and the defendant was denied any visitation rights. This court affirmed the judgment in an unpublished memorandum and order pursuant to our rule 1:28, as amended, 46 Mass. App. Ct. 1001 (1998). *Adoption of Maurice,* 66 Mass. App. Ct. 1117 (2006).

[2]The plaintiff and the child lived in New Jersey at the time the defendant filed the complaint.

result in his conviction if she gave the information to the Internal Revenue Service. The defendant stated that she would proceed with those matters unless her demands were met. The defendant then made the following demands: (1) visitation with her child; (2) sole custody of the child upon plaintiff's death; (3) psychiatric evaluations of the parties; (4) appointment of a guardian ad litem for the child; (5) payment of her medical bills in regard to her pregnancy with the child; and (6) the revocation of G. L. c. 209A order.

At the end of the conversation, the defendant handed Draisin a large envelope, entitled "Exhibits Offered on September 29, 2005 in Support of Motion for Custody and Visitation Rights dated August 31, 2005 or an Alternative Motion for Consideration of Exhibits." The envelope contained thirteen pages of documents that the defendant stated she would be filing with the court that day. Draisin accepted receipt of the envelope. At the conclusion of the conversation, Draisin reported the defendant's demands to the plaintiff, including the actions that the defendant planned to take if her demands were not met. The plaintiff rejected those demands.[3]

c. *Proceedings in Massachusetts after the New Jersey court hearing.* On October 3, 2005, the plaintiff filed a complaint in the Probate and Family Court for civil contempt against the defendant, claiming multiple violations of the permanent abuse prevention order issued on January 26, 2005. The plaintiff alleged five violations by the defendant: (1) impersonating a courier service to gain access to the plaintiff's private office in New York; (2) attempting to contact and threaten the plaintiff through a third party, i.e., Draisin; (3) serving Draisin with court papers in hand, rather than by mail; (4) appearing in the Superior Court of New Jersey seeking custody and visitation rights in direct violation of the decree terminating her parental rights; and (5) making threats to the plaintiff regarding actions she would take if he did not allow her visitation and custody of the child.

The defendant filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the Probate and Family Court

---

[3]On September 29, the proceeding was rescheduled to October 24, 2005. Draisin filed a motion to dismiss on October 24 on the ground of lack of subject matter jurisdiction. The judge allowed the motion.

did not have jurisdiction over her alleged actions at the New Jersey proceeding because it took place outside the Commonwealth. The judge denied the motion to dismiss, ruling that the court had retained jurisdiction over the defendant's actions even though they occurred outside of the Commonwealth.

On November 15, 2005, a hearing was held on the plaintiff's complaint for contempt. It was held before a probate judge who was familiar with the parties, having issued nearly all the temporary orders in this matter, as well having presided over the termination of parental rights case. The defendant was present. Both the plaintiff and Draisin testified at the hearing.

After the hearing, the judge found the defendant in contempt. The judge acknowledged that although the defendant could communicate with the plaintiff's attorney as required by court proceedings, her communications "exceeded the scope of the litigation," because they fell "outside the parameters of the disputed matter."

The judge noted that under the G. L. c. 209A order, the defendant was ordered not to contact the plaintiff through a third party and that she could only serve papers on the plaintiff through the mail or through a legitimate process server. The judge ruled that the defendant's communications to Draisin and serving court papers on him violated the order.[4]

The judge also ordered the defendant to return to the Probate and Family Court the previously impounded documents that she had taken, and also to identify all persons to whom those documents were disclosed; to post a three-year $50,000 bond as collateral against future violations of the Probate and Family Court's impoundment and abuse prevention orders, to be used to "pay sanctions of Five Thousand . . . Dollars per [future] violation," or to serve ninety days; and to report to the court by January 9, 2006, that the bond had been posted.

The defendant did not post the $50,000 bond and did not appear before the court to surrender herself before January 9,

---

[4]The judge stated that the plaintiff did not present any supporting evidence that the defendant violated the abuse prevention order by hand-delivering court documents to the plaintiff's attorney (not Draisin) in New York. The judge stated that she would not make any ruling "at this time" on the plaintiff's claim.

2006. Since that date, a capias has issued which the plaintiff has been unable to enforce despite numerous attempts by the local constable. The defendant filed a timely appeal.

On appeal, the defendant raises three issues. She claims that (1) the c. 209A restraining order does not extend beyond the territorial limits of the Commonwealth and cannot be enforced by the Commonwealth courts; (2) the defendant's statements to Draisin and her act of delivering to Draisin certain papers that she intended to file as exhibits with the New Jersey court did not constitute violations of the c. 209A restraining order even if they had been done in Massachusetts; and (3) the judge's order, requiring the defendant to post a $50,000 bond in anticipation of, and as a remedy for, future contempts exceeded the court's authority.

2. *Discussion.* a. *Plaintiff's claim that the appeal must be dismissed.* The plaintiff claims that because the defendant has avoided service of the capias that issued on or after January 9, 2006, the defendant is a fugitive from justice, and her appeal must be dismissed. See *Commonwealth* v. *Rezendes*, 353 Mass. 228, 228-229 (1967).

Although the present appeal is not a criminal proceeding, we have dismissed an appeal where the appellant was a fugitive and his fugitive status, among other things, impaired the appellee's ability to collect on a specific aspect of the judgment. *Yousif* v. *Yousif*, 61 Mass. App. Ct. 686, 690-691 (2004). The court noted, however, that "the violation of court order from which an appeal is taken does not alone constitute a sufficient basis to impose such a severe sanction." *Id.* at 688.

In considering whether to invoke the harsh equitable remedy of dismissal, we consider the following factors: "(1) whether [the defendant] is, at least constructively, a fugitive and [her] fugitive status is connected to the judgment appealed from; (2) whether [the defendant's] fugitive status impairs enforceability of the judgment; and (3) whether lesser sanctions are available that would address the court's concerns." *Id.* at 689-690. Here, although the defendant has ignored the orders of the Probate and Family Court and may arguably be a fugitive from justice, her absence does not require dismissal of the appeal.

The plaintiff in this matter is not attempting to enforce a

money judgment as did the appellee in *Yousif*, 61 Mass. App. Ct. at 690-691. See *Sommer* v. *Monga*, 35 Mass. App. Ct. 761, 764 (1994), cert. denied, 513 U.S. 1169 (1995) (citing cases where "efforts by an appellant to frustrate the collection of a judgment awarding monetary damages as justifying disentitlement to an appeal from the underlying judgment"). Here, the plaintiff is attempting to obtain compliance with a "no contact" order. The defendant's current absence does not materially prejudice the plaintiff's efforts to enforce the no-contact order. See *Walsh* v. *Walsh*, 221 F.3d 204, 216 (1st Cir. 2000), cert. denied, 531 U.S. 1159 (2001) (barring appeal is too harsh a sanction "in the absence of any showing that the fugitive status has impaired the rights of the other [party]"). Accordingly, we consider the merits of the defendant's appeal.

b. *Substantive issues.* (i) *Subject matter jurisdiction.* The defendant first contends that the Probate and Family Court lacked subject matter jurisdiction to consider the plaintiff's contempt complaint because the allegedly contumacious conduct took place in New Jersey.[5] "Subject matter jurisdiction is 'jurisdiction over the nature of the case and the type of relief sought.' " *Middleborough* v. *Housing Appeals Comm.*, 449 Mass. 514, 520 (2007), quoting from Black's Law Dictionary 870 (8th ed. 2004). Here, the defendant argues that the Commonwealth's criminal laws, including G. L. c. 209A, have no application outside the Commonwealth's borders; her New Jersey conduct, therefore, may be adjudicated as contumacious only by a New Jersey court.

The defendant's argument, however, is without merit. A "G. L. c. 209A proceeding is a civil, and not a criminal, proceeding." *Frizado* v. *Frizado*, 420 Mass. 592, 596 n.3 (1995). Here, the probate judge issued a judgment holding the defendant in civil contempt and issued sanctions aimed at coercing future compliance with court orders. *Furtado* v. *Furtado*, 380 Mass. 137, 141 (1980) (civil contempt proceedings are designed to coerce compli-

---

[5]The defendant does not contest personal jurisdiction. Contrast *Caplan* v. *Donovan*, 450 Mass. 463, 468-472, cert. denied, 128 S. Ct. 2088 (2008) (c. 209A order requiring no abuse and no contact valid without personal jurisdiction over defendant because court may adjudicate status of relationship between multiple parties even where personal jurisdiction over all parties is not established).

ance with court orders; criminal contempt proceedings are exclusively punitive). Compare *Aroesty* v. *Cohen*, 62 Mass. App. Ct. 215, 220 (2004) (imprisonment for a definite term signifies criminal contempt). Therefore, the contempt finding here is properly characterized as civil in nature. See *Jones* v. *Gallagher*, 54 Mass. App. Ct. 883, 886 (2002) (c. 209A proceedings are generally civil although some orders issued pursuant to the statute contain criminal penalties).

Our courts routinely enforce civil orders notwithstanding that the claimed violative conduct took place outside the Commonwealth. Compare *Scola* v. *Scola*, 318 Mass. 9, 10-11 (1945) (defendant enjoined from selling a boat; held in contempt after sailing the boat from Boston to Maine and selling it there); *Coyne Industrial Laundry of Schenectady, Inc.* v. *Gould*, 359 Mass. 269, 271 (1971) (violation of a decree prohibiting the defendant from soliciting a laundry business in "Massachusetts, Rhode Island and several Connecticut counties"); *Qiuyue Shao* v. *Yue Ma*, 68 Mass. App. Ct. 308, 315-316 (2007) (Probate and Family Court had personal jurisdiction over the husband and therefore had jurisdiction to distribute property both inside and outside the Commonwealth). More particularly, courts retain subject matter jurisdiction with respect to abuse prevention orders protecting individuals who live on Federally owned land because there is no entrenchment on the jurisdiction of the Federal government. *Cobb* v. *Cobb*, 406 Mass. 21, 26 (1989) (court could issue an effective c. 209A order within the confines of an area ceded to the Federal government). Here, it is claimed that the defendant's actions violated the integrity of a Massachusetts order and that claim was properly addressed by a Massachusetts court. The probate judge correctly denied the defendant's motion to dismiss for lack of subject matter jurisdiction.

(ii) *Finding of contempt.* The defendant next argues that her conduct as alleged may not be found in violation of the c. 209A order because her contact and communications with the plaintiff's attorney were made in the context of the New Jersey legal proceedings. She contends that her actions were akin to settlement demands and were not so outrageous or inflammatory as to fall outside the privilege.

"In order to hold a party in contempt, the judge must find 'a

clear and undoubted disobedience of a clear and unequivocal command.' " *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1)*, 424 Mass. 430, 442-443 (1997), quoting from *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.*, 361 Mass. 35, 36 (1972). See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 567-570 (1997). The complainant must prove his case by a preponderance of the evidence. *Manchester* v. *Department of Envtl. Quality Engr.*, 381 Mass. 208, 212 (1980). The judge's ultimate finding of contempt is reviewed under the abuse of discretion standard. *Massachusetts Commn. Against Discrimination* v. *Wattendorf*, 353 Mass. 315, 317 (1967). "An abuse of discretion 'consists of judicial action "that no conscientious judge, acting intelligently, could honestly have taken." ' " *Twin Fires Inv., LLC* v. *Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 425 (2005), quoting from *Bartley* v. *Phillips*, 317 Mass. 35, 43 (1944).

There is an exception to the "no contact" order that allows a person who is the subject of a c. 209A order to engage in litigation against the person who obtained the order.[6] Therefore, under the exception, the defendant acting pro se had the right at the September 29 hearing to enter into negotiations with the plaintiff's counsel. There is a limitation, however, to the litigation exception. In view of the c. 209A order, the person against whom the order has been entered cannot, under the guise of negotiations, engage in tactics designed to harass, threaten, or embarrass the person who sought the order.

Here, although the defendant's demands were directly related to the New Jersey custody hearings, her threats to the plaintiff, through his lawyer, to obtain those demands were designed to harass and coerce and were outside the parameters of the limited exception to the no-contact order. See *supra* at 817. The defendant was aware that her threats would be communicated to the plaintiff. As the judge found, the "Defendant's attempt to contact [the] Plaintiff through a third party was a clear violation of the Abuse Prevention Order." Such conduct, threatening the

---

[6]The judge recognized the exception, ruling that in this matter, "[i]nitiation of litigation regardless of its merits is not a violation of the Abuse Prevention Order issued by this Court."

other party with economic harm unless demands were met, would be reprehensible if done by a lawyer during negotiations. We agree with the judge that the defendant's actions crossed the line of reasonable conduct in the course of litigation in making threats to the plaintiff's counsel involving the defendant.[7]

We hold that the defendant's conduct violated the no-contact order and that the judge did not commit error in holding the defendant in contempt.[8,9]

(iii) *Posting of the bond.* The judge noted that the defendant "has a record before this Court of violating Court orders on multiple occasions." The judge ordered the defendant to post a $50,000 bond "as collateral against future violations of this Court's impoundment and abuse prevention orders" (emphasis

---

[7]The judge recognized that the "threats" made to the plaintiff's counsel to be communicated to the plaintiff were different from the type of "threats" set forth in G. L. c. 209A.

The "threats" uttered by the defendant, according to the judge, were intended "to hurt, punish, destroy . . . as in retaliation or intimidation." We agree with the judge.

[8]The defendant's in-hand service of exhibits to Draisin relating to the ongoing litigation did not constitute a clear and unambiguous violation of the order. An order must be "sufficiently clear, so that the party to be bound is provided with adequate notice of the required or prohibited activity." *Mohamad* v. *Kavlakian*, 69 Mass. App. Ct. 261, 263 (2007), quoting from *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. at 566. Here, the order explicitly prohibited in-hand service to the plaintiff or to a third party on his behalf. Prohibiting all communication, however, between a pro se litigant (the defendant) and the attorney for the holder of a c. 209A order (the plaintiff) would create an unworkable litigation situation. Thus, we conclude that the defendant in the circumstances shown here did not violate the order by giving to Draisin the documents that she planned to offer as an exhibit.

[9]After the judge found the defendant guilty of contempt, she ordered, among other things, that the defendant "immediately produce all medical records and evaluations involving [the child], court-impounded records including any trial transcripts she has in her custody and transfer the records and any copy to the court's custody." The defendant was also ordered to report in writing "regarding all entities, agencies or individuals from which she sought the prohibited records and attach an affidavit describing the action she took to seek prohibited materials or letter or subpoena seeking same."

It appears that the documents to which the judge referred were introduced in evidence at the contempt hearing and are now in the possession of the court. We note that the defendant's appellate brief states that the documents have been returned to the court; the plaintiff's brief makes no mention of the documents. We do not know the status of the affidavit, but there is nothing in this record that indicates whether it was filed.

added). The bond was to be used to pay sanctions of $5,000 per violation. Later, the bond requirement was modified to limit its duration to three years.

We recognize that the record does demonstrate the defendant's persistent conduct in violating court orders prior to the judgment of contempt ordered in this matter. We discuss, therefore, in some detail, the posting of the bond by the judge after she found the defendant in contempt.

Coercive sanctions, such as the posting of a bond, "look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction by setting forth in advance the penalties the court will impose if the party deviates from the path of obedience." *Labor Relations Commn.* v. *Fall River Educators' Assn.*, 382 Mass. 465, 476 (1981), quoting from *Latrobe Steel Co.* v. *United Steelworkers Local 1537*, 545 F.2d 1336, 1344 (3d Cir. 1976). "[T]he amount of a coercive fine requires consideration of the defendant's financial resources in order to arrive at a fine that will be effective but not unreasonably oppressive. . . . In determining the amount of a fine imposed as a means of securing future compliance, a judge should consider the character and magnitude of the threatened harm, the probable effectiveness of any suggested sanction, the defendant's financial resources, and the seriousness of the burden on that defendant." *Fall River Educators' Assn.*, 382 Mass. at 481-482.

Here, the judge made no specific findings regarding the effectiveness of the bond requirement or the defendant's financial resources (other than the fact that she is generally represented by private counsel) as required under the standard of *Fall River Educators' Assn.*, 382 Mass. at 481-482. There is no indication in the record how the bond amount of $50,000 was determined, and there is no indication of the defendant's ability to post such collateral.

We vacate the order for posting of the bond. We hasten to add that considering the stormy relationship between the parties, the judge is free to order a bond be posted if the situation warrants it, in accordance with the steps outlined above.

3. *Conclusion.* The judgment of contempt is affirmed. The order to post a bond is vacated.

*So ordered.*