NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-1274                                          Appeals Court

LUIS MARTINEZ  vs.  LYNN HOUSING AUTHORITY.

No. 17-P-1274.

Suffolk.     October 12, 2018. - January 18, 2019.

Present:  Rubin, Wolohojian, & Blake, JJ.

Contempt.  Notice.  Practice, Civil, Contempt.  Housing
     Authority.

Civil action commenced in the Land Court Department on July 18, 2016.

A complaint for contempt, filed on January 26, 2017, was heard by Howard P. Speicher, J.

Webb F. Primason for the defendant.
John G. Mateus for the plaintiff.

WOLOHOJIAN, J.  The Lynn Housing Authority (LHA) appeals

from a judgment of civil contempt entered against it following a

bench trial in the Land Court.  For essentially the reasons given by the trial judge, we affirm.[1]

Background.  We summarize the findings of the trial judge, none of which is argued, or shown, to be clearly erroneous.  Luis Martinez filed the underlying Land Court action against Marilu H. Rega and her mother, Ana A. Reyes, seeking reformation of a deed in which he conveyed an undivided fee interest in his property at 5 South Elm Street, Lynn (property), to himself and Reyes as joint tenants.[2]  Martinez's underlying claim was that

---

[1] While this appeal was pending but before oral argument, the plaintiff, Luis Martinez, filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Massachusetts (Bankruptcy Court) under Chapter 13 of the Bankruptcy Code and filed a suggestion of bankruptcy with this court.  In light of this development, we ordered Martinez to seek clarification from the bankruptcy trustee as to whether the trustee sought to intervene as the real party in interest in this appeal or whether she expressly ratified Martinez's ability to pursue the appeal himself.  In response to our order, the bankruptcy trustee affirmed Martinez's ability to pursue the claim himself for two reasons.  First, Martinez's bankruptcy petition was filed under Chapter 13 rather than Chapter 7 of the Bankruptcy Code, and therefore he is permitted to pursue the claim on his own behalf.  Second, on October 19, 2018 (after oral argument), the Bankruptcy Court entered an order allowing Martinez's motion to voluntarily dismiss his bankruptcy case.

We note that, for these same reasons, it appears that the stay entered in the Land Court (where Martinez also filed a suggestion of bankruptcy) is no longer necessary.

[2] In addition to the LHA, Rega and Reyes were named as defendants in the complaint for contempt.  Because Rega notified the Land Court that she had petitioned for bankruptcy, the contempt trial went forward without her, and the complaint was stayed with respect to her.  She is not a party to this appeal. Reyes did not file a notice of appeal.

Reyes and Rega defrauded him into conveying an interest in the property by falsely claiming that they could help him obtain a modification of his outstanding mortgage loan, which was then in default. Rega and Reyes claimed that they could help Martinez only if he conveyed an interest in the property to Reyes.

After a hearing at which neither Rega nor Reyes appeared despite receiving notice, the judge issued a preliminary injunction dated July 28, 2016 (July Order), that provided in relevant part:

> (1) "defendants Marilu Rega and Ana A. Reyes, are hereby ENJOINED and RESTRAINED from selling, leasing, or otherwise conveying or encumbering their interest in [the property] . . ." and

> (2) "defendants Marilu Rega and Ana A. Reyes, their agents, representatives, employees, contractors, and others acting in concert with them or otherwise having actual knowledge of this Order, are hereby ENJOINED and RESTRAINED from entering upon [the property], . . . collecting rents for any part of said property, and from exercising any rights to ownership thereof, and are further ENJOINED and RESTRAINED from interfering with plaintiff Luis Martinez's exercise of ownership rights to [the property], . . . including without limitation, his entry into and maintenance of any part of said property, and other rights of ownership consistent with this Order."

After a second hearing at which Rega appeared pro se and sought to represent Reyes under a "power of attorney,"[3] the judge issued

---

[3] The trial judge properly concluded that Rega, who is not a lawyer, could not represent her mother. See G. L. c. 221, §§ 46A, 48; LAS Collection Mgt. v. Pagan, 447 Mass. 847, 849-850 (2006), quoting Lowell Bar Ass'n v. Loeb, 315 Mass. 176, 183 (1943) ("Plainly the commencement and prosecution for another of legal proceedings in court, and the advocacy for another of a

a further order dated August 17, 2016 (August Order), restating the terms of the July Order (we refer hereafter to the July Order and the August Order together as the Orders).

Notwithstanding the Orders, Reyes continued to collect rent for an apartment at the property for a part of July, 2016, and from August, 2016 through January, 2017.  This tenant had a rent subsidy voucher pursuant to which the LHA paid a portion of $2,700 in monthly rent as a rent subsidy to Reyes as the "landowner/owner" of the property.  The tenant paid his portion of the monthly rent directly to Reyes and Rega.

In August, 2016 (on an unspecified date), Martinez personally delivered copies of the Orders to the LHA by handing them to the caseworker assigned to the tenant.  The caseworker told Martinez that she would check with her manager about what to do with respect to the injunction.  She in turn told her manager that there was a dispute concerning the property, but she did not remember whether she gave him the Orders.

The LHA made rent subsidy payments to Reyes for part of July, and for August and September, 2016.  But on September 22, 2016, the caseworker sent Reyes a letter informing her that the September payment had been made in error because Reyes had not

cause before a court . . . are reserved exclusively for members of the bar").

yet signed a "Massachusetts Rental Voucher Program Lease" (lease) and a "Massachusetts Rental Voucher Program Payment Contract" (contract). Reyes was advised to come in to the LHA's offices to sign these documents concerning the LHA's agreement to pay the tenant's rent subsidy to Reyes; otherwise, Reyes was to return the September subsidy payment to the LHA. The LHA suspended further payments pending execution of the required documents.

On September 28, 2016, Martinez's counsel sent an electronic mail message (e-mail) to the caseworker's manager attaching the Orders. In addition, the e-mail stated that the attached Orders "prohibit[] Rega/Reyes from collecting rents from tenants of [the property] & noting no interference with Mr. Martinez's ownership rights." The manager was a law school graduate but not a practicing attorney. He read the Orders and concluded that they did not prohibit the LHA from continuing to make payments to Reyes. The manager apparently did not forward the Orders to anyone else at the LHA.

On October 11, 2016, Reyes sent a letter to the LHA asserting that she was the "landlord/owner" of the property and claiming that the August Order had issued only because she had not been present in court. A few weeks later, on November 30, 2016, Reyes met with the caseworker at the LHA's offices and signed the lease and contract, representing herself to be the

"owner" of the property and entitled to receive rent payments from the tenant and rent subsidy payments from the LHA. The caseworker "unfroze" the rent subsidy account and released the payments to Reyes for October and November. The LHA made further payments for December, 2016, and January, 2017. The signing of the lease and contract also meant that the LHA no longer sought the return of the September, 2016, payment or other earlier payments made to Reyes.

On January 26, 2017, Martinez filed a complaint for civil contempt, see Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982), alleging that Rega, Reyes, and the LHA had violated the terms of the Orders. After a bench trial, the judge found against the LHA and Reyes,[4] and judgment entered accordingly. Only the LHA has appealed.

Discussion. "[A] civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command," for which the burden of proof rests with the plaintiff. Birchall, petitioner, 454 Mass. 837, 853 (2009). See Commercial Wharf E. Condominium Ass'n v. Boston Boat Basin, LLC, 93 Mass. App. Ct. 523, 532 & n.21 (2018). We review the judge's ultimate finding of contempt for an abuse of

---

[4] As discussed in note 2, supra, the trial went forward without Rega, who had filed a petition for bankruptcy.

discretion.  See Massachusetts Comm'n Against Discrimination v.

Wattendorf, 353 Mass. 315, 317 (1967).[5]

The LHA first argues that, as a matter of law, absent

formal service,[6] it cannot be said to have had actual notice of

the Orders.  However, Mass. R. Civ. P. 65 (d), 365 Mass. 832

(1974), itself makes clear that actual notice is not the same as

formal service, and that the requirement of actual notice may be

satisfied other than by formal service:  "[A]n injunction . . .

is binding only upon the parties to the action, . . . and upon

those persons in active concert or participation with them who

receive actual notice of the order by personal service or

otherwise" (emphasis added).  Short of reading the words "or

otherwise" out of the rule (which we will not do), the LHA's

argument in this regard must fail.  Cf. Commonwealth v. Burgess,

426 Mass. 206, 224-225 (1997) ("One of the cardinal principles

of statutory construction is to give effect, if possible, to

---

[5] "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citations omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

[6] For these purposes, the LHA contends that service was required either pursuant to Mass. R. Civ. P. 4 (d) (5), as amended, 370 Mass. 918 (1976), because it is "a public body politic and corporate," G. L. c. 121B, § 3, or pursuant to the presentment requirements of G. L. c. 258, § 4, the Massachusetts Tort Claims Act.

every clause and word of a statute"); Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 352 Mass. 617, 618 (1967).

To the extent that the LHA is instead arguing that the judge erred when he found, as a matter of fact, that the LHA had actual notice, the LHA has failed to show that finding to be clearly erroneous. See White v. Hartigan, 464 Mass. 400, 414 (2013) ("A finding of fact by the trial judge will not be deemed 'clearly erroneous' unless the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" [quotation and citation omitted]). See also ZiLOG, Inc. v. Corning, 450 F.3d 996, 1007 (9th Cir. 2006) ("knowledge of [an] injunction is a question of fact"). It is undisputed that, on two separate occasions, Martinez (or his counsel) delivered the Orders to employees of the LHA. On the first occasion, the Orders were delivered to the caseworker responsible for the particular tenant at the property and for administering the lease and contract, as well as payments relative to that tenant's rent subsidy. The caseworker in turn informed her manager, who had a law degree. On the second occasion, Martinez's counsel sent the Orders directly to the manager, who reviewed them and (whether rightly or wrongly) considered himself equipped (whether by training or responsibility, or both) to decide what they did, or did not,

require of the LHA.  In these circumstances, the LHA has failed to demonstrate that the judge erred in finding, whether as a matter of law or of fact, that the LHA had actual notice of the Orders.

The LHA next argues that the Orders did not contain a clear and unequivocal command to the LHA.  In essence, the LHA argues that the phrase "acting in concert with" (coming, as it does, after the words "agents, representatives, employees, contractors") applies only to those acting on behalf, and under the control, of Rega and Reyes.  It follows, the LHA argues, that it was not acting in concert with Rega and Reyes because it was not acting at their direction.

Here again, the language of Mass. R. Civ. P. 65 defeats the LHA's argument.[7]  Rule 65 (d) allows a judge, for good cause shown, to issue an injunction that binds not only the parties to the action, but also "those persons in active concert or participation with them who receive actual notice of the order." See Sommer v. Maharaj, 65 Mass. App. Ct. 657, 666-667 (2006), reversed in part on other grounds, 451 Mass. 615 (2008) ("a nonparty who is aligned with a party, whether as an agent or

---

[7] The LHA frames this argument in terms of the language of the Orders, which deviates slightly from the language of rule 65 (d).  We hew here to the language of the rule but note that the outcome would be no different under the language of the Orders, which was less favorable to the LHA in that the word "active" was omitted.

employee or through participation with a party, may be subject to the directives of an injunction so long as he or she received actual notice of the order").

Here, we see no error in the judge's conclusion that the LHA acted in active concert or participation with Rega and Reyes. The LHA chose to enter into a contractual relationship -- including a document titled "Lease"[8] -- whereby it would pay a rent subsidy on behalf of a tenant to Reyes, as "owner/landlord" of the property. In fact, the LHA took the active step of requiring that the lease and contract be executed by Reyes before further subsidy payments were made. And, once the documents were signed, the LHA unfroze funds and made monthly payments to Reyes pursuant to those documents. This set of facts was clearly sufficient to permit the judge to find that the LHA was acting in active concert with Reyes such that it was bound by the Orders once it also had actual notice of them.

The LHA next argues that the judge erred in finding that the LHA violated a clear and unequivocal command. "Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt." Birchall, petitioner, 454 Mass. at 852, quoting Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation (No. 1), 424 Mass. 430, 443

---

[8] A copy of the lease is not in the record appendix.

(1997). Here, we discern no ambiguity in the terms of the Orders nor any doubt whether the LHA's actions (as we have set them out above) fell within their prohibitions. Not only did the LHA actively participate with Reyes in violating the provision of the Orders prohibiting her (and Rega) from collecting rents for any part of the property, by entering into contractual relations dealing solely with Reyes as "owner/landlord," but it also actively participated in interfering with Martinez's ownership rights to the property.

Finally, without citation to legal authority or reference to the correct standard of review (which is abuse of discretion), the LHA argues error in the amount of damages awarded. However, given the judge's finding that the LHA ratified its earlier payments to Reyes even after it had actual notice of the Orders, the judge was entitled to include the July (partial), August, and September 2016 payments as part of the damages against the LHA. As to the judge's award of attorney's fees and costs, the LHA has not shown that the judge abused his discretion in determining that the rate and hours were reasonable in light of the result obtained, particularly given that the award was joint and several between the LHA and Reyes. "As a matter of law, the awarding of attorney's fees and costs is an appropriate element of a successful civil contempt proceeding" (quotation and citation omitted). Ventresca v. Town

Manager of Billerica, 68 Mass. App. Ct. 62, 65 (2007).  See

Commonwealth v. One 1987 Ford Econoline Van, 413 Mass. 407, 414

(1992).

Conclusion.  For these reasons, the judgment on the

complaint for civil contempt is affirmed.[9]

So ordered.

---

[9] Martinez's request for attorney's fees, interest, damages, and double costs in connection with the appeal is denied.