NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-559

KAREN I. KOHAN

vs.

ARIEL KOHAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The husband appeals from a judgment, issued by a judge of the Probate and Family Court, adjudicating him guilty of civil contempt.  On appeal, the husband argues that the wife did not prove her case by clear and convincing evidence, and that the judge erred by failing to hold an evidentiary hearing and instead holding a trial based on oral representations that was prejudicial to the husband.  We affirm.

Background.  Following divorce proceedings, a judge of the Probate and Family court incorporated the parties' separation agreement (agreement) into a judgment of divorce nisi (divorce judgment).  Exhibit E of the agreement, titled "Division of Assets," outlined how the husband and the wife would handle the division and exchange of household property.  The agreement provided, among other things, that the husband would leave the

wife's personal property in a storage facility, for her to retrieve within twenty days of the judge's approval of the agreement.

On December 20, 2021, the wife's counsel notified the husband's counsel that the husband had not complied with the agreement because the wife had searched the storage unit and had only found one photo, had found no photo albums, and had found no business records or personal papers, among other things.[1] The next day, on December 21, 2021, the wife filed a complaint for civil contempt in the Probate and Family Court. By his timely answer, the husband maintained that he had provided each item that the agreement required.

A hearing was held on January 14, 2022, before a judge of the Probate and Family Court. At the hearing, the parties were sworn in, counsel for each party made an argument to the judge, and each party spoke. The wife told the judge that the family photos she was seeking held a lot of sentimental value because she does not see her son at all. She also said her personal papers included (1) immigration documents, which were "priceless" to her because if she did not have them she could be

---

[1] The e-mail also stated that the husband had failed to return most of the wife's jewelry, some footwear, "a vast collection of cookbooks" (including a cookbook that the wife received from her mother), part of a silver metal boat, a matching linen and window treatment set, and a pottery set and basket, all of which were included in the agreement.

2

in legal trouble; and (2) her daughter's social security card, which would be difficult to replace. The husband told the judge that the wife had previously picked up her personal documents at the home and, while he did unsuccessfully search for the missing items, he did not "flip the house upside down . . . just to find the little things."

On January 26, 2022, the judge entered a judgment finding the husband in contempt and ordering him, within thirty days, to produce "the wife's personal identification documents," "the daughter's social security card," and "a copy of the family photos in albums." Failure to produce these items would result in sanctions of $2,500 per item. The judge also ordered the husband to pay the wife's attorney's fees in the amount of $2,500. The judge issued findings of fact and conclusions of law on May 26, 2022, in which she credited the wife's testimony, and declined to credit the husband's testimony that he made a good faith effort to find the wife's personal property. The husband timely appealed from all aspects of the judgment.

Discussion. 1. Civil contempt. "'[A] civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command,' for which the burden of proof rests with the plaintiff." Martinez v. Lynn Hous. Auth., 94 Mass. App. Ct. 702, 705 (2019), quoting Birchall, petitioner, 454 Mass. 837, 853 (2009). For such a

3

finding, "there must be [1] a clear and unequivocal command and [2] an equally clear and undoubted disobedience." Hoort v. Hoort, 85 Mass. App. Ct. 363, 365 (2014). "We review the judge's ultimate finding of contempt for an abuse of discretion." Martinez, supra.

a. Unequivocal command. The husband first argues that the language in the agreement did not serve as a clear and unequivocal command requiring him to provide the items listed to the wife. Specifically, he references the following language contained in Exhibit E, section II(B), paragraph three:

> "The [h]usband has placed the [w]ife's property in storage . . . and provided permission for her to access [the storage unit]. Within twenty (20) days of the Court's acceptance of the within agreement, the [w]ife shall pick up her personal property from the storage facility. The property she is picking up is identified in the below paragraph four (4)."

Among the wife's personal property listed in paragraph four were "[s]ome [f]ramed photographs of her children and family," "photo albums," and "personal papers for herself and [her daughter]." We view this language as sufficiently clear and unequivocal to meet the standard for civil contempt. A civil contempt finding may be upheld "where, although the operative language was facially unclear, the simple, straightforward, and undisputed facts in the record . . . clearly showed not only what the language meant but also that the parties shared a common understanding of that meaning." Sax v. Sax, 53 Mass. App. Ct.

4

765, 772-773 (2002).  Additionally, "contempt findings have been upheld in cases where the governing order, although requiring some legal interpretation, was couched in terms that provided clear notice of its boundaries" (quotation and citation omitted).  Id. at 772.  See Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 567 (1997), and cases cited.

Both parties understood that the agreement served to divide assets between them, including the wife's "personal property" identified paragraph four.  The listed personal property included the items that the wife alleged had not been returned by the husband, i.e., family photographs and personal papers for the wife and her daughter.  Moreover, both the agreement and the judge's findings reflect the parties' understanding that the agreement placed an affirmative duty on the husband to return the listed personal property to the wife:  the husband acknowledged this obligation by stipulating that he had already placed the listed items in the storage unit for the wife to retrieve, and he further acknowledged his affirmative duty to produce these items when testifying that he had looked for them in good faith (but conceded that he did not "flip the house upside down" in his search).

b.  Undoubted disobedience.  Once the judge finds that the defendant received a clear and unequivocal command, the judge must then find, by clear and convincing evidence, that the

5

defendant "disobediently refrained" from following that command. Warren Gardens Hous. Coop. v. Clark, 420 Mass. 699, 701 (1995). See Birchall, petitioner, 454 Mass. at 853.

In her complaint, the wife provided the husband with a list detailing the items of which she most urgently wished to regain possession. The divorce judgment, which incorporated the parties' agreement, required the husband to move all listed items from the house to the storage unit. As of the date of the contempt hearing, the husband had not placed the listed items in the storage unit. Because the divorce judgment unequivocally commanded the husband to move the listed items to the storage unit, and the judge found that the husband did not make a good faith effort to comply, the judge was "warranted in inferring a wil[l]ful disobedience of the court's order." Furtado v. Furtado, 380 Mass. 137, 150 (1980). We therefore conclude that the judge's ultimate contempt finding was not an abuse of discretion. Martinez, 94 Mass. App. Ct. at 705.

c. Amount of contempt penalty. We also review the trial judge's imposition of a contempt penalty to ensure that the judge did not abuse her discretion when determining the penalty amount. "[T]he amount of a coercive fine requires consideration of the defendant's financial resources in order to arrive at a fine that will be effective but not unreasonably oppressive." L.F. v. L.J., 71 Mass. App. Ct. 813, 823 (2008), quoting Labor

6

Relations Comm'n v. Fall River Educators' Ass'n, 382 Mass. 465, 481 (1981). "In determining the amount of a fine imposed as a means of securing future compliance, a judge should consider the character and magnitude of the threatened harm, the probable effectiveness of any suggested sanction, the defendant's financial resources, and the seriousness of the burden on that defendant." L.F., supra, quoting Labor Relations Comm'n, supra at 482.

Explaining her reasoning behind the contempt penalty, the judge found that the wife would suffer harm if the husband did not return the requested items and that there was "legitimate concern that [the] [h]usband did not act in good faith to locate [the] [w]ife's personal property and secure it in a storage unit." The judge also found that the husband had "sufficient financial resources" to pay the $2,500 contempt penalty for each of the important items he failed to return to the wife. Because the judge's reasoning demonstrates adequate consideration of the relevant factors, we conclude the judge was within her discretion to impose the contempt penalty.

2. Due process. "A contempt proceeding must satisfy the requirements of due process." Milano v. Hingham Sportswear Co., 366 Mass. 376, 378 (1974). "[D]ue process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them

7

by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation."  Sodones v. Sodones, 366 Mass. 121, 127 (1974), quoting In re Oliver, 333 U.S. 257, 275 (1948).

a.  Evidentiary hearing.  The husband argues that the judge was required to hold an evidentiary hearing and erred by failing to do so.  First, we consider whether the judge was required to hold an evidentiary hearing in this case.  "A defendant in a contempt proceeding may . . . waive his right to an evidentiary trial."  Mahoney v. Mahoney, 65 Mass. App. Ct. 537, 540 (2006), quoting Milano, 366 Mass. at 379.  "Such a waiver may result, in effect, from a failure to assert rights in the trial court in a manner which permits effective appellate review."  Mahoney, supra.  While "under certain circumstances a judge may properly rule on a complaint for contempt without an evidentiary hearing, or without receiving live testimony . . . [t]ypically, in such cases, material facts are not in dispute."  Id.  "In some cases, an evidentiary hearing is deemed waived and a judgment of contempt may be founded upon oral representations . . . (at least in the absence of objection to such a procedure)."  Id. at 541.

Second, we consider whether the judge actually held an evidentiary hearing.  While the parties were sworn in at the

8

beginning of the hearing, we cannot say that the husband had "a chance to testify" by way of formal direct and cross examination, or to "call other witnesses in his behalf, either by way of defense or explanation'" as due process requires. Sodones, 366 Mass. at 127, quoting In re Oliver, 333 U.S. at 275. Therefore, the hearing conducted before the judge did not amount to a formal evidentiary hearing.

While we conclude that a full-blown evidentiary hearing did not take place, we also conclude that one was not required in this case. Because the record does not show that the husband either requested an evidentiary hearing, or that he objected in the trial court to the absence of an evidentiary hearing, we conclude that the husband waived his right to such a hearing. See Mahoney, 65 Mass. App. Ct. at 540-541.

b. Prejudicial trial. The husband next argues that he was prejudiced by a flawed trial process. To support his argument, he points to the length of the hearing (thirteen minutes), the evidence relied on by the judge, and the wife's testimony which he argues was unsworn and unchallenged. While the husband is correct as to the length of the hearing, the record confirms that both the husband and the wife were sworn in at the start of the hearing. The husband also spoke to the judge at greater length than the wife did, although for most of the hearing it was the parties' attorneys who spoke. The husband was given an

opportunity to explain his efforts to locate the wife's items and, in doing so, admitted that his search had been limited. Because the hearing was not a formal evidentiary hearing, the judge was not required to permit the husband to call witnesses or to admit evidence.  We conclude that the judge adequately heard both parties' perspectives on the issues before her and did not conduct the hearing in a prejudicial manner.

<u>Judgment affirmed</u>.

By the Court (Meade, Hershfang & D'Angelo, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  October 10, 2023.

---

[2] The panelists are listed in order of seniority.