NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-528

TOWN OF OXFORD[1]

vs.

DAVID BLONDIN[2] & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants, David Blondin and Prime Fitness and
Nutrition, Inc., doing business as Prime Supplements and
Nutrition (collectively, Prime Fitness), appeal from a Superior
Court judgment (1) dismissing their counterclaims against the

---

[1] By and through its board of health.

[2] Individually and in his capacity as manager of Prime Supplements and Nutrition and of Prime Fitness and Nutrition, Inc.

[3] Prime Fitness and Nutrition, Inc.; Prime Supplements and Nutrition; and the Governor of the Commonwealth, Lieutenant Governor of the Commonwealth, Commissioner of the Department of Public Health, and the Commonwealth, as parties in interest. Defendants William G. Saad and Alfred Saad, sued in their capacities as officers of North Oxford Garnetting Co., Inc. are not parties to the appeal.

plaintiff, the Town of Oxford (town), and their cross claims against the Governor of Massachusetts, Lieutenant Governor, Commissioner of Public Health, and the Commonwealth of Massachusetts (collectively, the Commonwealth), and (2) awarding the town fines and attorney's fees and costs. We affirm.

Background. On March 10, 2020, former Governor Charles D. Baker declared a state of emergency in Massachusetts due to the spread of COVID-19 and issued a series of emergency orders pursuant to his authority under the Civil Defense Act (CDA), St. 1950, c. 639, and G. L. c. 17, § 2A. See Desrosiers v. Governor, 486 Mass. 369, 370 (2020). On March 23, 2020, the Governor issued COVID-19 Order No. 13 requiring the temporary closure of businesses that did not provide essential services. On May 18, 2020, the Governor introduced a four-phase plan for reopening sectors of the economy. Fitness studios and gyms were included in phase three, and would not be authorized to reopen until June 29, 2020, at the earliest.

Prime Fitness's gym and fitness center had closed in accordance with Order No. 13, but reopened on May 18, 2020, before authorized to do so under the Governor's above-referenced plan and orders. The town issued three written citations to Prime Fitness for operating a nonessential business, and on May 22, 2020, as Prime Fitness was still operating, the town's board

2

of health issued a cease and desist order.  Prime Fitness did not comply with the order.

On May 28, 2020, the town filed a verified complaint against Prime Fitness, seeking injunctive relief.[4]  On June 5, 2020, a Superior Court judge issued a preliminary injunction against Prime Fitness, enjoining it from operating "until permitted to do so under any executive order issued by the Governor."  Prime Fitness pursued an interlocutory appeal of that order.[5]  That appeal was unsuccessful.[6]

On June 8, 2020, the town filed a verified complaint for civil contempt against Prime Fitness for failing to comply with the Superior Court's June 5, 2020, order.  After a hearing, the judge found "clear and convincing evidence of [Prime Fitness's] disobedience of the court's clear and unequivocal order to cease operation" and assessed a prospective fine of $1,000 for every

---

[4] In the verified complaint, the town also sought a declaratory judgment that its board of health had authority to enforce the cease and desist order against Prime Fitness.

[5] In the interlocutory appeal, Prime Fitness challenged the temporary restraining order and preliminary injunction on grounds that (1) the Governor's COVID-19 orders were arbitrary and capricious as applied to Prime Fitness and violated the defendants' right to due process, and (2) the orders were an unconstitutional delegation of the Legislature's lawmaking power to the Governor.

[6] On November 30, 2021, a panel of this court dismissed Prime Fitness's appeal as moot because the preliminary injunction, by its terms, had ceased to apply on June 6, 2020.

3

day of noncompliance.  On June 18, 2020, after Prime Fitness continued to defy the order, the judge ordered the town to "cause the utilities to the premises to be discontinued" and "secure the premises against re-entry by changing the locks."

On July 21, 2020, Prime Fitness filed counterclaims against the town and cross claims against the Commonwealth arising out of the issuance and enforcement of the Governor's COVID-19 orders.  Specifically, Prime Fitness asserted takings claims for damages under (1) the Fifth Amendment to the United States Constitution and G. L. c. 79, and (2) section 5 (b) of the CDA, St. 1950, c. 639.  The Commonwealth and the town filed motions to dismiss, which a Superior Court judge allowed on the basis that Prime Fitness had failed to allege a compensable taking.[7] The judge awarded the town $15,279 in attorney's fees, costs, and fines.  This appeal ensued.

Discussion.  1.  Preliminary injunction.  Prime Fitness makes numerous arguments on appeal regarding the validity of the preliminary injunction and the underlying COVID-19 orders.  Namely, Prime Fitness argues that the orders violated its due process rights and constituted an impermissible delegation of legislative authority in violation of art. 5 of the

---

[7] On September 9, 2021, a Superior Court judge allowed the Commonwealth's motion to dismiss.  The same judge allowed the town's motion to dismiss on April 14, 2022.

4

Massachusetts Declaration of Rights. Prime Fitness's arguments are nearly identical to those raised in their prior appeal, see note 5, supra, and the issue is still moot. See Branch v. Commonwealth Employment Relations Bd., 481 Mass. 810, 817 (2019), cert. denied, 140 S. Ct. 858 (2020) ("A moot case is one where a court can order 'no further effective relief'" [citation omitted]).

In any event, Prime Fitness's challenge to the preliminary injunction and COVID-19 orders on due process and nondelegation grounds is foreclosed by the Supreme Judicial Court's (SJC) decision in Desrosiers v. Governor, 486 Mass. 369 (2020). In Desrosiers, the SJC held that the Governor's COVID-19 orders were within his authority under the CDA, and that the orders did not violate the separation of powers under art. 30 of the Massachusetts Declaration of Rights, or Federal and State constitutional rights to procedural and substantive due process or free assembly. Id. at 371-372, 392-393. We are not persuaded by Prime Fitness's argument that the issues they raise are distinguishable from those decided in Desrosiers. Prime Fitness's claim that the Governor exercised "prolonged legislative dominance" in violation of art. 5 and art. 30 is, in essence, a nondelegation argument.[8] Article 5 is not the proper

---

[8] Article 5 provides: "[a]ll power residing originally in the people, and being derived from them, the several magistrates

5

vehicle for that argument, as "the doctrine of nondelegation derives rather from art. 30." Arlington v. Board of Conciliation & Arbitration, 370 Mass. 769, 775 (1976). Further, Desrosiers rejected an identical due process argument. See Desrosiers, supra at 390 ("Although some businesses and organizations bear a larger burden than others . . . this alone does not render arbitrary the restrictions imposed by the emergency orders"). Thus, Prime Fitness's challenge to the validity of the preliminary injunction and COVID-19 orders fails.[9]

2. Counterclaims and cross claims. "We review the allowance of a motion to dismiss de novo." Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). We accept as true well-pleaded factual allegations and reasonable inferences drawn therefrom. See Schaer v. Brandeis Univ., 432 Mass. 474,

_____

and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them."

[9] Prime Fitness also claims that the Governor's classification of gyms and fitness centers in phase three of the reopening plan, contrasted with his classification of facilities serving "professional sports teams" in phase two of the reopening plan, violated the equal protection clause of art. 10 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution. We disagree, as the classification satisfies rational basis review. See Desrosiers, 486 Mass. at 390 ("The emergency orders as a whole were informed by public health recommendations and serve the State interest of slowing the spread of COVID-19, which is a legitimate State interest").

6

477-478 (2000).  "The ultimate inquiry is whether the [claimants] alleged such facts, adequately detailed, so as to plausibly suggest an entitlement to relief."  Greenleaf Arms Reality Trust I, LLC v. New Boston Fund, Inc., 81 Mass. App. Ct. 282, 288 (2012).  The claimants must plead more than "subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts" (quotations and citation omitted).  Schaer, supra at 478.

a.  General Laws c. 79.  Prime Fitness alleges that the Commonwealth and the town committed a taking under G. L. c. 79 and the Fifth Amendment by issuing and enforcing the emergency orders that temporarily closed its gym and restricted operations.  "Article 10 of the Massachusetts Declaration of Rights and the Fifth and Fourteenth Amendments to the United States Constitution prohibit the taking of private property for public use without just or reasonable compensation."  Fitchburg Gas & Elec. Light Co. v. Department of Pub. Utils., 467 Mass. 768, 775 (2014).  A compensable taking occurs when "a property interest is taken from the owner and applied to the public use because such use is beneficial to the public," whereas an exercise of police power occurs when "an owner's property interest is restricted or infringed upon to prevent its use in a manner detrimental to the public interest."  Davidson v. Commonwealth, 8 Mass. App. Ct. 541, 548 (1979).

In Davidson, we concluded that the Commonwealth's action of taking over the operation of a nursing home during a declared public health emergency constituted a lawful exercise of police power for which no compensation was required. See Davidson, 8 Mass. App. Ct. at 545-548. The government action at issue in Davidson occurred after the nursing home was unable to pay its staff and had asked certain patients to leave. Id. at 542-543. Due to the lack of nursing homes in the area and the danger that transferring patients would pose to their health, the Commonwealth assumed operation of the facility and "exercis[ed] its sovereign powers to maintain the public health." Id. at 549.

Here, the Governor's COVID-19 orders requiring businesses like Prime Fitness to close temporarily likewise constituted "an exercise of the State's police power" and a "restriction upon the [Prime Fitness's] use of its property to prevent the use thereof in a manner that is detrimental to the public interest" (quotation and citation omitted). Davidson, 8 Mass. App. Ct. at 549. Prime Fitness's allegations fail to show that the Commonwealth or the town "appropriated" Prime Fitness's gym "for [their] own use or exploitation." See id. at 548-549. Rather, as in Davidson, the allegations show that the Governor "acted under authority of State law" in issuing emergency orders and that the town then enforced those orders to "maintain the public

8

health."  Id. at 549.  In short, Davidson compels the conclusion that the actions alleged by Prime Fitness did not amount to a compensable taking.  Thus, Prime Fitness's counterclaims and cross claims under G. L. c. 79 fail as a matter of law.[10]

b.  Civil Defense Act.  Prime Fitness also fails to establish a plausible claim for damages under section 5 of the CDA.  Section 5 (b) of the CDA authorizes the Governor to "seize[]" and "take possession" of personal and real property after proclaiming a state of emergency pursuant to the act.  See St. 1950, c. 639, § 5 (b).  Section 5 (c) allows "[a]ny owner of property of which possession has been taken" under the act to "file a petition in the superior court" for compensation.  St. 1950, c. 639, § 5 (c).

Prime Fitness alleges that the Commonwealth and the town "took possession" of the property when they "issu[ed] orders preventing its further use as a health club facility" and when they "caus[ed] the locks to be changed and the utilities to the facility to be terminated[,]" entitling them to relief under section 5 (c) of the CDA.  Prime Fitness has acknowledged, however, that they do not own the property and that they hold only a "leasehold interest."  Because they are not an "owner of

_____

[10] Prime Fitness's regulatory taking argument under Penn Cent. Transp. Co. v. New York City, 438 U.S. 104 (1978), is likewise unavailing for the reasons discussed in the briefs of the Commonwealth and the town.

9

property," they are not entitled to seek relief under the CDA. See St. 1950, c. 639, § 5 (c).  Moreover, Prime Fitness does not allege facts that plausibly show that the town or the Commonwealth "seized" or "took possession" of the property. Neither the Commonwealth nor the town took physical possession of the gym, and Prime Fitness retained their leasehold interest. As a result, Prime Fitness's counterclaims and cross claims under the CDA fall short.

3. Attorney's fees, costs, and fines.  Finally, although Prime Fitness has filed an appeal from the judge's order awarding the town attorney's fees, costs, and fines, they have failed to make any appellate argument on that issue or cite to authority supporting this claim.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("appellate court need not pass upon questions or issues not argued in the brief").  Even assuming, arguendo, that the issue is not waived, we discern no abuse of discretion in the judge's decision to award attorney's fees, costs, and fines to the town after a successful civil contempt proceeding.[11]  See Labor

_____

[11] Prime Fitness asks that we vacate the contempt order but fails to make any arguments about the finding of contempt. Therefore, we need not consider the issue.  See Zora v. State Ethics Comm'n, 415 Mass. 640, 642 n.3 (1993) ("bald assertions of error, lacking legal argument and authority" do not rise to level of appellate argument).

10

Relations Comm'n v. Fall River Educators' Ass'n, 382 Mass. 465, 476 (1981) (judge may impose fines for each day of continued contempt of court's order); Martinez v. Lynn Housing Auth., 94 Mass. App. Ct. 702, 708 (2019).

Conclusion. For the foregoing reasons, we affirm the Superior Court final judgment dated March 17, 2023, dismissing Prime Fitness's counterclaims and cross claims and awarding to the town a total of $15,279 in attorney's fees, costs, and fines.[12]

Judgment affirmed.

By the Court (Vuono, Neyman & D'Angelo, JJ.[13]),

Clerk

Entered: November 15, 2024.

---

[12] The town's request for an award of appellate attorney's fees and costs is denied.

[13] The panelists are listed in order of seniority.

11